IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| E'Mann Comichi,<br>　　　*Plaintiff*, | §<br>§<br>§ | |
| vs. | §<br>§ | No. 4:25-cv-512 |
| Officer Ingrid A. Pethel;<br>Officer Brian S. Lord;<br>Officer Wesley R. Hamilton;<br>Detective William M.<br>Norwood, B & B Wrecker<br>Service, Inc.; and Bert<br>Gibbons,<br>　　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## Plaintiff's Original Complaint

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff **E'Mann Comichi**, by and through his counsel of record, Brandon J. Grable of Grable PLLC, complaining of Defendants Euless Police Officer **Ingrid A. Pethel** (Badge #706); former Euless Police Officer **Brian S. Lord** (Badge #454); former Euless Police Officer **Wesley R. Hamilton** (Badge #616); Euless Police Detective **William M. Norwood** (Badge #212); **B & B Wrecker Service, Inc.**; and **Bert Gibbons** (collectively, "Defendants"), and for cause of action would respectfully show the Court the following:

## I.    PRELIMINARY STATEMENT

1.    This is a civil rights action under 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law which deprived Plaintiff of rights secured under the Constitution and laws of the United States. Plaintiff brings claims for false arrest, unlawful search, unlawful seizure, failure to intervene, malicious prosecution, and related violations of Texas state law.

2.    On September 22, 2024, Plaintiff attempted to prevent the towing of his nephew's rental truck by entering it before it was fully hooked up to the tow truck—a right explicitly protected under both Texas state law and the City of Euless Municipal Code. Plaintiff himself called the police to the scene. Despite the tow truck driver's explicit admission to Defendants that "I was not 100% connected to it," the responding officers escalated the situation. Officer Pethel conducted an unlawful search of Plaintiff without reasonable suspicion, explicitly threatened to arrest him solely for refusing to identify himself during what was, at most, an investigative detention, and then carried out that threat by arresting him without probable cause. Officers Hamilton and Lord witnessed these constitutional violations but failed to intervene despite having the opportunity to do so. Detective Norwood had a clear

opportunity to stop the malicious prosecution but failed to do so on one of the charges despite the complete lack of probable cause.

3. Plaintiff was subsequently held in jail for 48 hours, and the charges against him were ultimately dismissed, confirming the lack of probable cause for the arrest.

## II.    JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action asserts claims arising under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983, seeking redress for the deprivation of Plaintiff's constitutional rights under color of state law.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as they form part of the same case or controversy and arise from the same common nucleus of operative facts as the federal claims, making the exercise of supplemental jurisdiction appropriate.

6. Venue is proper in the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in

Euless, Texas, which is located in Tarrant County within this judicial district and division.

### III.   PARTIES

7.   Plaintiff **E'Mann Comichi** is a resident of Moline, Illinois. At all relevant times, Plaintiff was lawfully in Euless, Texas, staying at his nephew's apartment to watch his dog while his nephew was out of town.

8.   Defendant **Ingrid A. Pethel** (Badge #706), at all relevant times, was employed by the Euless Police Department. She is sued in her individual capacity.

9.   Defendant **Brian S. Lord** (Badge #454), at all relevant times, was employed by the Euless Police Department. He is sued in his individual capacity.

10.   Defendant **Wesley R. Hamilton** (Badge #616), at all relevant times, was employed by the Euless Police Department. He is sued in his individual capacity.

11.   Defendant **William M. Norwood** (Badge #212), at all relevant times, was employed by the Euless Police Department. He is sued in his individual capacity.

12.    Defendant **B & B Wrecker Service, Inc.** ("B&B") is a Texas corporation that provides towing services for the City of Euless. When performing nonconsent tows at the request of law enforcement, B&B acts as an agent of law enforcement pursuant to Texas Occupations Code § 2308.255(e).

13.    Defendant **Bert Gibbons** is a tow truck operator employed by B & B Wrecker Service and is sued in his individual and as an agent of law enforcement under Texas Occupations Code § 2308.255(e).

### IV.    FACTUAL ALLEGATIONS

14.    In September 2024, Plaintiff agreed to watch his nephew's dog and apartment while his nephew was out of town for a few days. His nephew had rented a Penske truck (paid for by the Plaintiff) and parked it near the Euless Dog Park before leaving town. Plaintiff was authorized by his nephew to access and use the truck if needed during his absence.

15.    On September 22, 2024, at approximately 12:00 p.m., Plaintiff was walking his nephew's dog near the Euless Dog Park. He observed his nephew's rented Penske truck on the side of the road with a tow truck positioned in front of it.

16.    Upon seeing that the tow truck had not yet hooked up the Penske truck, Plaintiff immediately ran to the truck and entered it. At the time Plaintiff entered the vehicle, it was not yet hooked up to the tow truck.

17.    According to the City of Euless's Code, a vehicle is "hooked up" when the "vehicle is fully prepared for transport by attachment to a tow truck, lifted in tow position, with tow lights and safety chains attached, and, if required, placed on a dolly in a raised position and the only thing remaining is for the tow operator to drive away." City Code § 90-82. **Dkt. 1-1, A-011**.

18.    The Texas Department of Licensing and Regulation (TDLR), established the following rights of consumers subject to non-consent tows: "If you return to your car and it is being hooked-up to a tow truck but IT IS NOT FULLY hooked up and ready for towing, you can keep your car WITHOUT paying a CHARGE."[1] This is an official interpretation of Texas law regarding towing rights.

19.    The City of Euless adopted a city ordinance consistent with this interpretation. City Code § 90-94(c) states that an "owner,

---

[1] https://www.tdlr.texas.gov/towing/consumerinfo.htm

authorized operator, or authorized agent of the owner of a motor vehicle that is subject to a nonconsent tow . . . has an **absolute right** to regain possession of the vehicle" without a drop fee if they arrive "to move the vehicle before the vehicle is fully hooked up[.]" (emphasis added). **Dkt. 1-1, A-013**.

20.     Despite the vehicle not being fully hooked up, Gibbons, the tow truck operator, refused to release Plaintiff's vehicle unless he paid a $350.00 drop fee (despite not yet hooking up the vehicle). Gibbons contends that Plaintiff was not entitled to possession of the vehicle since he had tried to hook the vehicle up for over twenty minutes before Plaintiff arrived. Gibbons' conduct violated both local ordinance and Chapter 2308 of the Texas Occupations Code.

21.     Concerned about the situation, Plaintiff called the police. When Euless Police Officer Hamilton (Badge #616) arrived at the scene, Plaintiff explained to Officer Hamilton that he had entered the truck before it was hooked up, which should have stopped the tow process.

22.     Nonetheless, Officer Hamilton—while actively observing Gibbons still trying to hook up Plaintiff's truck—insisted that Plaintiff was "obstructing" the tow truck driver's duties and ordered Plaintiff to exit the truck. **Dkt. 1-1, A-002, at 02:26**. This was despite Texas and

local law granting the Plaintiff the right to retake possession of the vehicle.

23.    Defendant Gibbons even admitted to Officer Hamilton, as captured on his body camera footage: "He's right, I was not 100% connected to it." **Dkt. 1-1, A-002, at 04:59**. When Hamilton declared, "It looks hooked up to me," Gibbons clarified, "he got me as I was backing up to hook up to it." **Dkt. 1-1, A-002, at 13:50**.

24.    Despite this admission, Officer Hamilton agreed to let Gibbons complete the hook-up and tow Plaintiff's vehicle in violation of the law.

25.    After Plaintiff exited the truck, Officers Pethel (Badge #706) and Lord (Badge #454) approached him. Defendant Pethel, within a minute of arriving on the scene and without any lawful authority, detained Plaintiff by stating, "I'm going to pat you down for weapons. I'm not giving you an option." **Dkt. 1-1, A-004, at 01:24**.

26.    Defendant Pethel conducted a pat-down search of Plaintiff that included touching his genitals and going through his pockets. This pat-down and search was unlawful as it occurred in the absence of any reasonable suspicion that Plaintiff committed, was committing, or was about to commit a crime or was armed or dangerous.

27.    Defendants Lord and Hamilton, who witnessed this pat down and search, had time to intervene but failed to do so despite its clearly unlawful nature.

28.    Defendant Pethel informed Plaintiff that if he was not going to pay the drop fee (which requirement was unlawful), then the vehicle was going to get towed. Plaintiff informed Pethel he was not going to pay the drop fee and would deal with it later. He began to walk away. **Dkt. 1-1, A-004, at 04:50**.

29.    As Plaintiff attempted to walk away, Defendant Pethel demanded, "Since I spoke with you, I need to have your name." When Plaintiff refused, Pethel stated, "I'm going to make it easy for you, either give me your name or you're going to be under arrest." **Dkt. 1-1, A-004, at 05:00**. Plaintiff put his hands behind his back, and Defendant Pethel put handcuffs on him and escorted him to her vehicle, where she searched him and seized his personal belongings.

30.    Under Texas Penal Code § 38.02, a person commits the offense of Failure to Identify only if they have been lawfully arrested and refuse to provide identifying information. The statute does not require identification during an investigative detention.

31.     Defendant Pethel arrested Plaintiff solely for refusing to identify himself during an investigative detention, which is not a crime under Texas law.

32.     After arresting Plaintiff, Defendant Pethel decided to also charge Plaintiff with Interference with Public Duties, because Plaintiff "interfere[ed] with [her] lawful duty of towing the vehicle by sitting in the truck as it was actively getting towed." **Dkt. 1-1, A-007**.

33.     Under Texas Penal Code § 38.15, a person commits the offense of Interference with Public Duties only if they interrupt, disrupt, impede, or otherwise interfere with a peace officer "performing a duty or exercising authority imposed or granted by law."

34.     Critically, by the time Pethel arrived on the scene, Plaintiff was not in the truck. He had already complied with Officer Hamilton's order to get out. More importantly, under the law, Plaintiff had an "absolute right" to regain possession of the truck since the tow truck operator had not yet hooked up the vehicle.

35.     Plaintiff was booked into the Hurst jail at approximately 3:30 p.m. on September 22, 2024, under the incorrect name "Emanuel Goins" rather than his legal name "E'mann Comichi." During his

detention, Plaintiff was denied his sunglasses despite suffering from photophobia, causing him severe migraines from the bright cell lights.

36.    He was charged with (1) Interference with Public Duties and (2) Failure to Identify.

37.    On September 24, 2024, while Plaintiff was still in jail, Detective Norwood investigated the incident. Based on his review, he determined that Defendants lacked probable cause to charge him with Interference with Public Duties and dropped that charge. **Dkt. 1-1, A-009**.

38.    However, he allowed the charge of Failure to Identify to proceed.

39.    Plaintiff was released at approximately 12:20 p.m. on September 24, 2024—a detention period of roughly 45 hours.

40.    The charges were without probable cause and terminated in Plaintiff's favor.

### V.    CAUSES OF ACTION

### COUNT ONE
### FALSE ARREST IN VIOLATION OF 42 U.S.C. § 1983
### (Against Defendant Pethel)

41.    Plaintiff incorporates all preceding paragraphs by reference.

42.    Defendant Pethel, acting under color of state law, within five minutes of arriving on the scene, arrested Plaintiff without probable cause in violation of the Fourth Amendment. **Dkt. 1-1, A-004, at 05:00**.

43.    Defendant Pethel explicitly arrested Plaintiff solely for refusing to identify himself during an investigative detention, which is not a crime under Texas Penal Code § 38.02 or Fourth Amendment jurisprudence. *See Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017) ("[P]olice cannot arrest an individual solely for refusing to provide identification.").

44.    After arresting Plaintiff for failing to identify himself, she then charged him with interfering with her "lawful duty of towing the vehicle." **Dkt. 1-1, A-007**. However, Plaintiff had a legal and "absolute" right under City of Euless Municipal Code § 90-94(c) to enter and remain in the vehicle, as it was not fully hooked up to the tow truck—a fact confirmed by the tow truck driver's explicit admission on camera: "He's right, I was not 100% connected to it." *Compare* **Dkt. 1-1, A-013** *with* **A-002, at 04:59**. This fact was so obvious to Detective Norwood, that he dismissed this charge two days later. **Dkt. 1-1, A-009**.

45.    As a direct result of his unlawful seizure, Plaintiff was unable to return to Illinois as scheduled and was unable to communicate

with his two prospective employers, resulting in the termination of his employment opportunities and significant lost wages.

46.    As a direct result of Defendant Pethel's actions, Plaintiff suffered damages including loss of liberty, physical pain, emotional distress, and humiliation.

**COUNT TWO**

**UNLAWFUL SEARCH IN VIOLATION OF 42 U.S.C. § 1983 –
LACK OF REASONABLE SUSPICION
(Against Defendant Pethel)**

47.    Plaintiff incorporates all preceding paragraphs by reference.

48.    Defendant Pethel conducted an invasive search of Plaintiff without reasonable suspicion that he committed, was committing, or was about to commit a crime or was armed or dangerous, violating the Fourth Amendment.

49.    In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court established that officers may conduct a pat-down only if they have reasonable suspicion that the individual is armed and dangerous. The Fifth Circuit has consistently applied this standard, including in *United States v. Monsivais*, 848 F.3d 353 (5th Cir. 2017), where the court held that officers may not conduct a pat-down based merely on a person

"acting suspicious" without specific facts connecting them to criminal activity. *Id*. 358-59.

50.   The search was objectively unreasonable because:

a.   Defendants were called to the scene for an abandoned vehicle and not for any criminal investigation;

b.   Plaintiff posed no threat;

c.   Plaintiff had called the police himself;

d.   There were no indications that Plaintiff was armed or dangerous;

e.   The search extended to Plaintiff's pockets and genitals, exceeding a *Terry* frisk's permissible scope.

51.   Defendants Lord and Hamilton were present during the unlawful search and failed to intervene despite having both the opportunity and duty to do so.

52.   As a direct result of the unlawful search, Plaintiff suffered damages including violation of his bodily integrity, emotional distress, and humiliation.

**COUNT THREE**

**UNLAWFUL SEARCH AND SEIZURE INCIDENT TO UNLAWFUL ARREST IN
VIOLATION OF 42 U.S.C. § 1983**
**(Against Defendant Pethel)**

53.    Plaintiff incorporates all preceding paragraphs by reference.

54.    Defendant Pethel searched Plaintiff and seized his belongings incident to an unlawful arrest, which violates Plaintiff's clearly established rights under the Fourth Amendment.

55.    Absent a warrant, a search is only reasonable if it falls under a specific exception to the warrant requirement. *Kentucky v. King*, 563 U.S. 452, 459 (2011). A search incident to lawful arrest is one such exception. *Riley v. California*, 573 U.S. 373, 382 (2014). However, that does not apply here as a search to an unlawful arrest does not fall under the warrant exception and violates the Fourth Amendment. *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987)

56.    Because Plaintiff's arrest for failure to identify during an investigative detention was unlawful, any search conducted incident to that arrest was likewise unlawful.

57.     Defendants Lord and Hamilton knew the arrest was unlawful and had a duty to intervene to prevent both the unlawful arrest and the subsequent unlawful search.

58.     As a direct result of this unlawful search incident to an unlawful arrest, Plaintiff suffered damages including violation of his bodily integrity, emotional distress, and humiliation.

## COUNT FOUR
### FAILURE TO INTERVENE IN VIOLATION OF 42 U.S.C. § 1983
### (Against Defendants Lord and Hamilton)

59.     Plaintiff incorporates all preceding paragraphs by reference.

60.     Defendants Lord and Hamilton had a duty to intervene when witnessing Defendant Pethel violate Plaintiff's constitutional rights.

61.     In *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), the Fifth Circuit held that an officer may be liable under § 1983 for failure to intervene when that officer "knows that a fellow officer is violating an individual's constitutional rights," has "a reasonable opportunity to prevent the harm," and "chooses not to act."

62.    Defendants Lord and Hamilton knew Defendant Pethel was violating Plaintiff's rights by:

      a.     Conducting an unlawful pat-down search without reasonable suspicion;

      b.     Threatening to arrest Plaintiff solely for refusing to identify himself during a detention; and

      c.     Arresting Plaintiff without probable cause.

63.    Both officers had ample time and opportunity to intervene, as the events unfolded over several minutes, not in a split-second decision.

64.    Instead, Hamilton stood there and watched while Lord volunteered to hold Plaintiff's phones.

65.    As a direct result of Defendants' failure to intervene, Plaintiff suffered damages including loss of liberty, emotional distress, and humiliation.

**COUNT FIVE**
**UNLAWFUL SEIZURE IN VIOLATION OF 42 U.S.C. § 1983**
**(Against Defendants Pethel, Hamilton, Lord, Gibbons,**
**and B&B Wrecker)**

66.    Plaintiff incorporates all preceding paragraphs by reference.

67.     Defendants Pethel, Hamilton, Lord, Gibbons, and B&B Wrecker, acting under color of state law, conspired to violate Plaintiff's Fourth Amendment rights by seizing the truck without lawful authority.

68.     Defendants Gibbons and B&B Wrecker were acting as agents of law enforcement pursuant to Texas Occupations Code § 2308.255(e), which explicitly states that tow truck operators conducting nonconsent tows are "agents of the law enforcement agency."

69.     The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.

70.     City Ordinance authorized Plaintiff, as the operator, the "absolute right" to regain possession of the truck since it was not hooked up.

71.     Defendants did not have a warrant, consent, or an exception to the warrant requirement to tow Plaintiff's vehicle. Therefore, the towing Plaintiff's vehicle was unreasonable and in violation of the Fourth Amendment.

72.     As a direct result of these violations, Plaintiff suffered damages including towing and storage fees and loss of use of property.

**COUNT SIX**
**MALICIOUS PROSECUTION IN VIOLATION OF 42 U.S.C. § 1983**
**(Against Defendants Pethel, Lord, and Norwood)**

73. Plaintiff incorporates all preceding paragraphs by reference.

74. Defendants Pethel, Lord, and Norwood, acting under color of state law, initiated and continued criminal proceedings against Plaintiff without probable cause in violation of the Fourth Amendment right to be free from unreasonable seizure.

75. In 2022, the Supreme Court expressly recognized a § 1983 malicious prosecution claim in *Thompson v. Clark*, 596 U.S. 36, 42 (2022)

76. The elements for a malicious prosecution claim in the Fifth Circuit include: (a) the commencement or continuance of an original criminal proceeding; (b) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (c) its bona fide termination in favor of the present plaintiff; (d) the absence of probable cause for such proceeding; (e) malice; and (f) damages. *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023).

77. Defendants initiated criminal proceedings against Plaintiff by:

   a. Defendant Pethel arrested Plaintiff without probable cause and charged him with Failure to Identify and Interference with Public Duties;

   b. Defendant Lord participated in and supported the wrongful arrest and charges by signing off on one of the charge citations together with Pethel;

   c. Defendant Norwood reviewed the case and continued prosecution on the Failure to Identify charge despite knowing it lacked probable cause.

78. The proceedings terminated in Plaintiff's favor when both charges were ultimately dismissed.

79. The charges were without probable cause.

80. Critically, Plaintiff would not have been thrown in jail but for Defendants' initiation and continuation of these false charges.

81. The Failure to Identify charge was invalid from its inception because Texas Penal Code §38.02 only criminalizes refusing to identify after a lawful arrest, not during an investigative detention. As explicitly captured on officer body cameras, Defendant Pethel stated

"You're detained. I'm going to make it easy for you, either give me your name or you're going to be under arrest," demonstrating she knowingly arrested Plaintiff solely for refusing to identify during detention. **Dkt. 1-1, A-004, at 05:00**.

82.    This charge directly caused Plaintiff's initial seizure, as it was the explicit basis upon which Defendant Pethel arrested Plaintiff. Under Texas law, no reasonable officer would believe probable cause existed to arrest someone for declining to identify during detention, making this seizure unreasonable under the Fourth Amendment.

83.    The Interference with Public Duties charge was similarly invalid and further extended Plaintiff's unlawful seizure. This additional charge was applied *after* the initial arrest, despite Defendant Pethel having observed that Plaintiff was no longer in the truck when she arrived and had complied with all of Officer Hamilton's orders.

84.    Moreover, under City of Euless Municipal Code §90-94(c), Plaintiff had an 'absolute right' to regain possession of the vehicle since it was not fully hooked up—a fact confirmed by the tow truck driver's explicit admission that "He's right, I was not 100% connected to it." **Dkt. 1-1, A-002, at 04:59**. This invalid charge significantly prolonged

Plaintiff's seizure and loss of liberty that would not have otherwise occurred but for Defendants' conduct.

85. Detective Norwood's subsequent investigation recognized that Pethel lacked probable cause for the interference charge, resulting in the charge being dropped while Plaintiff was still in custody—clear evidence that, absent this invalid charge, Plaintiff should not have been arrested or thrown in jail.

86. Defendant Norwood, after reviewing the incident report and evidence, including body camera footage, knew or should have known that *both* charges lacked probable cause, yet continued prosecution on the Failure to Identify charge.

87. Defendants acted with malice as evidenced by:

a. Defendant Pethel's explicit threat to arrest Plaintiff solely for refusing to identify himself during a detention, stating: "I'm making it very easy for you. You're going to give me your name or else you're under arrest." **Dkt. 1-1, A-004, at 05:00**.

b. Defendant Pethel's blatantly false representation in her police report concerning Plaintiff's demeanor as

"extremely agitated and acting verbally erratic" **Dkt. 1-1, A-007**.

c.    Defendant Pethel's blatantly false representation in her police report that she requested Plaintiff to identify himself *after* "he was under arrest," despite clearly representing to him that he was only "detained," suggesting she knew that she could not arrest Plaintiff simply by refusing to identify. *Compare* **Dkt. 1-1, A-004, at 05:00** *with* **A-007**.

d.    Defendant Lord's statement to Plaintiff within two minutes of arriving, "I don't owe you anything. You're the one in the wrong here," revealing a predetermined judgment of guilt. **Dkt. 1-1, A-004, at 02:40**.

e.    Defendant Norwood's decision to continue prosecution on the Failure to Identify charge despite his recognition that the Interference charge lacked merit and despite access to body camera footage showing the entire encounter. **Dkt. 1-1, A-009**.

88.    Defendants Pethel and Lord had a duty not to initiate charges against Plaintiff since those charges lacked probable cause.

89.    Defendant Norwood had a duty to intervene and dismiss all charges lacking probable cause. By failing to dismiss the Failure to Identify charge, Defendant Norwood perpetuated the malicious prosecution of Plaintiff, for which he had to retain an attorney and engage in legal process to have the matter dismissed in his favor.

90.    As a direct result of Defendants' malicious prosecution, Plaintiff suffered damages including loss of liberty for approximately 45 hours, out of pocket damages, emotional distress, humiliation, and other damages to be proven at trial.

**COUNT SEVEN
CIVIL LIABILITY UNDER
TEXAS OCCUPATIONS CODE § 2308.404
(Against Defendants Gibbons and B&B Wrecker)**

91.    Plaintiff incorporates all preceding paragraphs by reference.

92.    Texas Occupations Code § 2308.404 creates a private cause of action against towing companies who violate Chapter 2308, establishing strict liability without requiring proof of negligence.

93.    Defendants Gibbons and B&B Wrecker violated Chapter 2308 and City of Euless Municipal Code by:

a.    Attempting to tow a vehicle with an occupant inside, which is prohibited;

b.    Failing to release the vehicle when Plaintiff arrived before the truck was fully hooked up, as specifically required by City of Euless Municipal Code § 90-94(c), which states: "In the event the owner or operator arrives to move the vehicle before the vehicle is fully hooked up, no drop fee may be charged";

c.    By violating Euless ordinance §90-94(c), Defendant also violated Texas Occupations Code Chapter 2308, specifically Sections 2308.208 and 2308.255, which require compliance with applicable municipal ordinances

d.    Falsely claiming authority to tow the vehicle and demanding payment despite Gibbons' own admission that the vehicle was not fully hooked up, in direct violation of the city ordinance; and

e. Unlawfully towing the vehicle and refusing to release the vehicle to Plaintiff unless he paid at least $1,400.00, which was assessed in contradiction of state and local law.

94. Defendant Gibbons' on-camera admission that "He's right, I was not 100% connected to it" conclusively establishes this violation. **Dkt. 1-1, A-002, at 04:59**.

95. Under § 2308.404(c), intentional, knowing, or reckless violations create liability for "$1,000 plus three times the amount of fees assessed."

96. As a direct result of these violations, Plaintiff suffered damages including towing and storage fees and loss of use of property.

**COUNT EIGHT**
**CIVIL THEFT UNDER THE TEXAS THEFT LIABILITY ACT**
**(Against Defendants Gibbons and B&B Wrecker)**

97. Plaintiff incorporates all preceding paragraphs by reference.

98. The Texas Theft Liability Act provides a civil cause of action for theft, defined as "unlawfully appropriating property with intent to deprive the owner of property." Tex. Civ. Prac. & Rem. Code § 134.002(2); Tex. Penal Code § 31.03(a).

99. Defendants Gibbons and B&B Wrecker unlawfully appropriated the Penske truck by towing it despite:

   a.   Plaintiff's presence in the vehicle;

   b.   Knowledge that Plaintiff was the authorized agent of the owner and was effectively the owner of the vehicle;

   c.   Defendant Gibbons' admission that the truck was not fully hooked up when Plaintiff entered it.

100. By taking the vehicle under these circumstances, the Defendants intended to deprive the Plaintiff of the property, thereby satisfying the elements of theft under Texas law.

101. Under the TTLA, Plaintiff is entitled to actual damages, statutory damages of up to $1,000, and reasonable attorney's fees and costs. Tex. Civ. Prac. & Rem. Code § 134.005.

**COUNT NINE**
**RESPONDEAT SUPERIOR**
**(Against B&B Wrecker Only)**

102. Plaintiff incorporates all preceding paragraphs by reference.

103. Defendant Gibbons was an employee of B&B Wrecker, acting within the course and scope of his employment when he committed the state law torts alleged herein.

104. Under the doctrine of respondeat superior, B&B Wrecker is liable for the state law torts committed by its employee.

## VI.    JURY DEMAND

105. Plaintiff hereby demands a trial by jury on all issues so triable.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and award the following relief:

a.    Compensatory damages in an amount to be determined at trial;

b.    Punitive damages against the individual Defendants;

c.    Statutory damages under the Texas Theft Liability Act and Texas Occupations Code § 2308.404;

d.    Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and applicable state law;

e.    Pre-judgment and post-judgment interest as allowed by law; and

f.      Such other relief as the Court deems just and proper.

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Dr., Ste. 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765
**Counsel for Plaintiff**