IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| E'Mann Comichi, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | No. 4:25-cv-512 |
| | § | |
| Officer Ingrid A. Pethel; | § | |
| Officer Brian S. Lord; | § | |
| Officer Wesley R. Hamilton; | § | |
| Detective William M. | § | |
| Norwood, B & B Wrecker | § | |
| Service, Inc.; and Bert | § | |
| Gibbons, | § | |
| *Defendants.* | § | |

## Appendix

In support of *Plaintiff's Original Complaint*, Plaintiff gives

notice of his reliance on the following:

| Exhibit | Description | Page Number |
|---|---|---|
| Exhibit 1 | Officer Hamilton's Body Worn Camera | A-001 |
| Exhibit 2 | Officer Lord's Body Worn Camera | A-003 |
| Exhibit 3 | Officer Pethel's "Narrative" from Her Police Report | A-005 |
| Exhibit 4 | Detective Norwood's "Drop/Change Charge Form" | A-008 |
| Exhibit 5 | Code of Ordinances, City of Euless, Texas §§ 90-82, 90-94 | A-010 |

# Exhibit 1

Videotape: Hamilton BWC (Exhibit 1) (Euless Police Department Sept. 22, 2024), https://grable.box.com/v/Comichi-BWC-Videos.

# Exhibit 2

Videotape: Lord BWC (Exhibit 2) (Euless Police Department Sept. 22, 2024), https://grable.box.com/v/Comichi-BWC-Videos.

# Exhibit 3

# Euless Police Department
## Narrative

Date of report: 2024-09-22                                    Case Number: 2400042081

Incident number: 2400042081

On Sunday, September 22, 2024, at approximately 1006 hrs., I, Officer Pethel (#706) and Officer Lord (#454) were dispatched to the parking lot of the Euless Dog Park located at 1900 Bear Creek Parkway, Euless, TX 76039, in reference to abandoned property.

Upon my arrival, I observed a 2024 yellow Penske box truck ████ Motor Vehicle-Sec. 552.130 ████ . The vehicle had already been "red tagged" on the driver's side window on Monday, September 16, 2024. The vehicle was ordered to move by Wednesday, September 18, 2024. I contacted B&B Wrecker to request the vehicle be towed due to it being considered abandoned as it had been in a public place for over 48 hours. B&B Wrecker driver, Bert Gibbons (W/M, ██ Confidential ██, arrived and began the process of towing the vehicle. Gibbons advised we could clear the scene, and Officers left the call location without incident.

Shortly after leaving, I, Officer Pethel (#706) and Officer Lord (#454) were again dispatched to 1900 Bear Creek Parkway, Euless, TX 76039, in reference to a disturbance. The complainant, Gibbons, advised a male subject entered the abandoned vehicle as Gibbons was connecting it to the tow truck and was refusing to exit the vehicle. Officer Hamilton (#616) and Sgt. Meador (#533) arrived to assist.

I arrived back on scene and made contact with the suspect, later identified as Emanuel Goins (B/M, ██ Confidential ██, who was speaking with Officer Hamilton at the time. Officer Hamilton advised upon his arrival, he observed Goins in the Penske truck refusing to exit the vehicle at the request of Gibbons. See Officer Hamilton's supplement for details.

Goins advised his nephew drives trucks for Penske and did not understand why it was being towed. Goins stated his nephew is out of town, so Goins was staying at his nephew's apartment to watch his dog. As he was walking the dog, he observed the vehicle being towed and left the animal in the dog park as he walked over to the vehicle and sat in the driver's seat to prevent it from being towed. Goins was extremely agitated and acting verbally erratic, prompting me to conduct a pat-down for weapons for officer safety. I advised Goins the vehicle had been illegally parked for over 48 hours and was actively being towed due to my request as a police officer. I advised Goins the tow truck driver may be able to release the vehicle to him if Goins was willing to pay a "drop-fee." Goins stated he would not pay a drop-fee. I asked Goins for his name in an effort to identify him, and he began walking away. I advised Goins he was detained and not free to leave. Goins turned back around facing me, refused to identify himself, and stated "take me to jail." Goins turned around, placed his hands behind his back, and again requested Officers take him to jail.

Officer: Pethel,I                                              ID#: 706
Approving Supervisor: Not approved                            ID#:

Page 1

A-006

# Euless Police Department
## Narrative

Date of report: 2024-09-22                                    Case Number: 2400042081

At that point, Goins was handcuffed (double-locked), searched incident to arrest, and placed in the rear of Unit 1044 for transport to the Hurst Jail. I advised Goins he was under arrest for Interference with Public Duties, and again asked him his name. Goins repeatedly stated, "I don't answer questions," and began whistling in an attempt to ignore me. I asked Goins his name again, allowing him the opportunity to identify himself, and he again stated, "I don't answer questions."

Due to myself, Officer Pethel, requesting a tow truck for a vehicle in violation of the TX Transportation Code and Goins interfering with my lawful duty of towing the vehicle by sitting in the truck as it was actively getting towed, Goins was charged with Interference with Public Duties. Additionally, Goins was charged with Failure to Identify due to Goins refusing to provide proof of identification after being advised of the fact he was under arrest.

Goins was transported in the rear of Unit 1044 to the Hurst Jail, where he continued to refuse to identify himself.

Due to Goins being placed under arrest, the dog was taken to the City of Euless Animal Shelter in the rear of Unit 1041 by Officer Hamilton.

At the jail, Goins continued to refuse to identify himself, leading Euless PSO Yamasaki (#472) to conduct a fingerprint check in an effort to obtain proper identification. The FBI provided a return of Emanuel Goins (B/M, ▮Confidential▮ with an ▮Motor Vehicle-Sec. 552.130▮ It should be noted that a TLETS check of Goins OLN number revealed an alias of Emann Comichi (B/M, ▮Confidential▮ with an address of 605 E 71st St. Apt. #265 Chicago, IL 60619. There were no outstanding warrants associated with either name.

An arrest report was completed for Failure to Identify (Citation #4155207) and Interference with Public Duties. A tow sheet was completed for the towed vehicle.

Dash Cameras: 1044 Pethel/Lord, 1041 Hamilton

Body Cameras: 706 Pethel, 454 Lord, 616 Hamilton, 533 Meador

DME: None.

---

Officer: Pethel,I                                                            ID#: 706
Approving Supervisor: Not approved                                           ID#:

A-007

# Exhibit 4

## Euless Police Department
## Criminal Investigations

### DROP / CHANGE CHARGE FORM

Date: _09/24/2024_

I, _Det. Norwood #221_      REQUEST TO DROP CHARGE (S) OF

1. _Interfer w/ Public Duties_

2. _____

3. _____

I, _____      REQUEST TO ADD THE CHARGE (S) OF

1. _____

2. _____

3. _____

ON THE FOLLOWING SUSPECT:

NAME _Goins, Emanuel_      DOB: Confidential Information-Sec. 552.101

RACE: _Black_      SEX: _Male_

IN REFERENCE TO CASE NUMBER AR: _24-00042081_

REQUESTING OFFICER SIGNATURE: _W. Norm #221_

SUPERVISOR'S SIGNATURE: _W. Norm #221_

JAILERS SIGNATURE: _____

A-009

# Exhibit 5

**§ 90-82.  Definitions.**

Abandoned. The condition of being abandoned, as defined in V.T.C.A., Transportation Code ch. 683, as amended.

Attempt to retrieve the motor vehicle. For purposes of paying the drop charge, attempt to retrieve the motor vehicle means any verbal request that a reasonable person would understand to mean, "Do not tow my car."

Before its removal from the property. As used in this chapter this term is in reference to a vehicle parked on property other than a public roadway and shall mean the time period until the tow truck enters a public street, road or highway,

City. The City of Euless in the County of Tarrant and State of Texas.

Consent tow. Any tow of a motor vehicle in which the tow truck is summoned by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle.

Contract towing service. The towing company performing police pulls for the city pursuant to contract.

Disabled vehicle. A vehicle which is rendered unsafe to be driven as the result of some occurrence other than a wreck, including but not limited to, mechanical failures or breakdowns, fire, vandalism or a vehicle which is in a safe driving condition, but the owner is not present or able or permitted to drive so as to reasonably necessitate that the vehicle be removed by a tow truck.

Drop fee. The fee charged for a nonconsent tow which is disengaged pursuant to this article, while the towed vehicle is still on the premises from which it is being removed.

Hooked up. The vehicle is fully prepared for transport by attachment to a tow truck, lifted in tow position, with tow lights and safety chains attached and, if required, placed on a dolly in a raised position and the only thing remaining is for the tow operator to drive away.

Illegally or unauthorized parked vehicle. A vehicle parked, stored or situated in violation of any state law or city ordinance or without the effective consent of the owner of the premises where the vehicle is parked, stored or situated.

Junk vehicle. A vehicle as defined in V.T.C.A., Transportation Code ch. 683, as amended. Junk vehicle does not include the following:

(1)  A vehicle or part thereof which is completely enclosed within a building in a lawful manner where it is not visible from the street or other public or private property;

(2)  A vehicle or portion thereof which is stored or parked in a lawful manner on private property in connection with the business of a licensed vehicle dealer; or

(3)  An unlicensed, operable or inoperable antique and special interest vehicle stored by a collector on his property, provided that the vehicle and the outdoor storage area is maintained in such a manner that they do not constitute a health hazard and are screened from ordinary public view by means of a fence, trees, shrubbery or other appropriate means.

Nonconsent tow. Any tow, which originates in the city, of a motor vehicle that is not a tow of a motor vehicle in which the tow truck is summoned by the owner or operator of the vehicle or by a

Downloaded from https://ecode360.com/EU6303 on 2025-05-14

A-011

person who has possession, custody, or control of the vehicle. The term includes but is not limited to, a police pull, a tow of a motor vehicle in which the tow truck is summoned because of a traffic accident or to a traffic incident, and a private property tow.

Parking facility. Public or private property used, wholly or partly, for restricted or paid parking. The term includes:

(1)  A restricted space on a portion of an otherwise unrestricted parking facility; and

(2)  A commercial parking lot, parking garage, and a parking area serving or adjacent to a business, church, school, home that charges a fee for parking, apartment complex, property governed by a property owners' association, or government-owned property leased to a private person, including:

  a.  A portion of the right-of-way of a public roadway that is leased by a governmental entity to the parking facility owner; and

  b.  The area between the facility's property line abutting a county or municipal public roadway and the center line of the roadway's drainage way or curb of the roadway, whichever is further from the facility's property line.

Person. Includes an individual, firm, corporation, association, partnership, joint venture or society.

Police pull. A police-initiated nonconsent tow or other transportation of a vehicle by a tow truck which is the result of a police officer exercising his authority to effect the removal of the vehicle pursuant to state law and this article.

Private property tow. Any tow of a vehicle authorized by a parking facility owner without the consent of the owner or operator of the vehicle.

Street. The entire width between the boundary lines of every publicly maintained way when any part thereof is open to the use of the public for the purposes of vehicular travel.

Tow truck. A motor vehicle, including a wrecker, equipped with a mechanical device used to tow, winch, or otherwise move another motor vehicle. The term does not include:

(1)  A motor vehicle owned and operated by a governmental entity, including a public school district;

(2)  A motor vehicle towing:

  a.  A racecar;

  b.  A motor vehicle for exhibition; or c. An antique motor vehicle.

(3)  A recreational vehicle towing another vehicle;

(4)  A motor vehicle used in combination with a tow bar, tow dolly, or other mechanical device if the vehicle is not operated in furtherance of a commercial enterprise;

(5)  A motor vehicle that is controlled or operated by a farmer or rancher and used for towing a farm vehicle; or

(6)  A motor vehicle that:

Downloaded from https://ecode360.com/EU6303 on 2025-05-14

A-012

    a.    Is owned or operated by an entity the primary business of which is the rental of motor vehicles; and

    b.    Only tows vehicles rented by the entity.

<u>Towing company.</u> An individual, association, corporation, or other legal entity that controls, operates, or directs the operation of one or more tow trucks over a public roadway in this state but does not include a political subdivision of the state.

<u>Vehicle.</u> Every device in, upon or by which any person or property is or may be transported or drawn upon a street or roadway, except devices moved by human power or used exclusively upon stationary rails or tracks. The term includes as operable or inoperable automobile, truck, motorcycle, recreational vehicle or trailer.

<u>Vehicle storage facility.</u> A garage, parking lot, or other facility that is:

(1)    Owned by a person other than a governmental entity;

(2)    Used to store or park at least ten vehicles each year; and

(3)    That is operated by a person who holds a license issued under V.T.C.A., Occupations Code ch. 2303 to operate the facility.

(Ordinance 1952, § 1, 3-27-12)

## § 90-94.  State regulation and towing charges for nonconsent tows.

(a)    The owner or operator of a towing company commits an offense if he charges a fee in excess of the maximum fee for the applicable nonconsent tow fee set by state regulation.

(b)    A towing company or vehicle storage facility operator may not charge any other fee for a nonconsent tow or service related to a nonconsent tow except a towing fee or a drop fee tow.

(c)    If the owner, authorized operator, or authorized agent of the owner of a motor vehicle that is subject to a nonconsent tow attempts to retrieve the motor vehicle before its removal from the property or parked location, the maximum amount that may be charged for a drop fee (if the motor vehicle is hooked up) is the maximum fee permitted by state regulation. Before its removal from the property the vehicle owner or operator has an absolute right to regain possession of the vehicle by payment of the drop fee. In the event the owner or operator arrives to move the vehicle before the vehicle is fully hooked up, no drop fee may be charged.

(d)    The towing company and the vehicle storage facility must comply with state law and the state department of license and regulation regulations as they pertain to methods of payment. Notice of the methods of payment shall be given by the towing company to the owner or operator of the vehicle towed if the owner or operator is on sight at the time of the tow and by the vehicle storage facility when the owner appears to claim the towed vehicle.

(Ordinance 1952, § 1, 3-27-12; Ordinance 2043, § 1, 9-23-14)

Downloaded from https://ecode360.com/EU6303 on 2025-05-14

A-013