IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| E'Mann Comichi, | § | |
|     *Plaintiff*, | § | |
| | § | |
| vs. | § | No. 4:25-cv-512 |
| | § | |
| Officer Ingrid A. Pethel; Officer | § | |
| Brian S. Lord; Officer Wesley | § | |
| R. Hamilton; Detective William | § | |
| M. Norwood, B & B Wrecker | § | |
| Service, Inc.; and Bert Gibbons, | § | |
|     *Defendants*. | § | |

**BRIEF IN SUPPORT OF PLAINTIFF COMICHI'S RESPONSE TO DEFENDANTS B&B WRECKER SERVICE, INC. AND BERT GIBBONS' RULE 12(B)(6) MOTION TO DISMISS**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff E'Mann Comichi, by and through undersigned counsel, respectfully submits this Brief in Support of Plaintiff Comichi's Response to Defendants B & B Wrecker Service, Inc. and Bert Gibbons' (collectively, "Towing Defendants") Motion to Dismiss,[1] and shows the Court as follows:

---

[1] Plaintiff concedes at this point, he does not have sufficient information to pursue a 1983 seizure claim against B&B Wrecker Service, Inc., and requests that claim be dismissed without prejudice in the event additional information becomes available throughout the discovery process.

1

**Table of Contents**

I.   INTRODUCTION: DEFENDANTS CANNOT ESCAPE THEIR OWN ADMISSION 4

II.   DEFENDANTS FUNDAMENTALLY VIOLATE RULE 12(b)(6) STANDARDS ..... 4

    A.   Legal Standard Requires Accepting Allegations as True ..................................................... 4

    B.   Defendants' Systematic Factual Disputes Violate *Iqbal* ...................................................... 5

    C.   These Violations Mandate Denial ....................................................................................... 5

III.   PLAINTIFF HAS CLEARLY ESTABLISHED FOURTH AMENDMENT
STANDING ............................................................................................................................ 5

    A.   Supreme Court and Fifth Circuit Precedent Establishes Standing for Authorized Users ... 6

    B.   Plaintiff's Multiple Bases for Standing ............................................................................... 6

    C.   Defendants' Contrary Authorities Are Distinguishable ....................................................... 7

    D.   Constitutional Injury Is Clearly Established ........................................................................ 7

IV.   THE VEHICLE SEIZURE VIOLATED CLEARLY ESTABLISHED FOURTH
AMENDMENT RIGHTS ...................................................................................................... 8

    A.   Municipal Ordinance and State Law Created Clear Legal Framework ............................... 8

    B.   Temporal Analysis: Constitutional Violation Preceded Any Justification ......................... 9

    C.   Community Caretaking Exception Does Not Apply ........................................................... 10

    D.   Post-Arrest Analysis Cannot Cure Prior Constitutional Violation ..................................... 11

V.   TOWING DEFENDANTS ACTED UNDER COLOR OF STATE LAW ................. 12

VI.   PLAINTIFF STATES VALID TEXAS STATE LAW CLAIMS ............................... 12

    A.   Texas Occupations Code § 2308.404 Creates Strict Liability ......................................... 12

    B.   Texas Theft Liability Act Claims ...................................................................................... 13

VII.   RESPONSE TO DEFENDANTS' SPECIFIC ARGUMENTS ................................. 13

    A.   Ordinance Interpretation: "Fully Hooked Up" Controls ..................................................... 13

    B.   "Abandonment" Theory Contradicts Well-Pleaded Facts .................................................. 14

    C.   State Actor Status Is Clearly Established ........................................................................... 14

VIII.   ALTERNATIVE MOTION FOR LEAVE TO AMEND ........................................ 15

IX.   SUPPLEMENTAL JURISDICTION IS APPROPRIATE ..................................... 15

X.   CONCLUSION: THE LAW WAS CLEAR, THE VIOLATION WAS ADMITTED,
THE REMEDY IS ESTABLISHED ..................................................................................... 15

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ................................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)............................................. 5

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). ......... 15

*Byrd v. United States* ................................................................................................ 6, 16

*Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) ...............................................

*Chiaverini v. City of Napoleon* 602 U.S. 556, 563 (2024)............................................. 11

*Cleveland Bd. of Educ. v. Loudermill* ........................................................................... 10

*Degenhardt v. Bintliff*, 117 F.4th 747 (5th Cir. 2024). ......................................... 6, , 10, 16

*Degenhardt v. Bintliff*, No. 2:23-CV-00239, 2024 WL 203249, 2024(S.D. Tex. Jan. 17, 2024) .... 6

*Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 73 (Tex. App.—Ft. Worth, 2005) .........................................................................................

*Pennsylvania v. Mimms* .................................................................................................. 9

*United States v. Gaulden*, 73 F.4th 390 (5th Cir. 2023 ................................................... 7

*United States v. Kye Soo Lee* .......................................................................................... 6

*United States v. Martinez*, 808 F.2d 1050, 1056 (5th Cir. 1987)...................................... 6

*United States v. Riazco*, 91 F.3d 752 (5th Cir. 1996) ...................................................... 7

*West v. Atkins*, 487 U.S. 42, 49 (1988). ........................................................................ 12

**Statutes**

28 U.S.C. § 1367(a) ....................................................................................................... 15

42 U.S.C. § 1983's ................................................................................................... 12, 16

Fed. R. Civ P. 15(a)....................................................................................................... 15

Tex. Occ. Code § 2308.404(c) ...................................................................................... 12

Texas Civil Practice & Remedies Code § 134.002(2) .................................................... 13

Texas Occupations Code § 2308.208.............................................................................. 12

Texas Occupations Code § 2308.404.............................................................................. 12

**Municipal Ordinances**
City of Euless Municipal Code § 90-94(c) ........................................................... 5, 9, 10, 16

**Administrative Guidance**
Texas Department of Licensing and Regulation.............................................................. 11

## I.     INTRODUCTION: DEFENDANTS CANNOT ESCAPE THEIR OWN ADMISSION

This case presents the extraordinary situation where defendants' own recorded admission demolishes their motion to dismiss. When Plaintiff attempted to reclaim his nephew's rental truck before it was fully connected to a tow truck, Defendant Bert Gibbons explicitly admitted on police body camera: **"He's right, I was not 100% connected to it." Compl. ¶ 23**; Dkt. 1-1, A-002, at 04:59.

This admission is legally dispositive. Under City of Euless Municipal Code § 90-94(c), vehicle owners and authorized operators have an "absolute right to regain possession of the vehicle" if they arrive "before the vehicle is fully hooked up." **Compl. ¶ 19**; Dkt. 1-1, A-013. By Defendants' own expert acknowledgment, Plaintiff exercised this absolute right—yet they refused to honor it, completed an unlawful seizure, and now ask this Court to dismiss his claims for challenging their admittedly improper conduct.

Beyond this fatal admission, Defendants' motion systematically violates Rule 12(b)(6) standards by disputing well-pleaded factual allegations rather than accepting them as true, fails to address recent Fifth Circuit precedent establishing standing for authorized vehicle users, and cannot overcome clearly established constitutional and statutory protections. The motion should be denied in its entirety.

## II.     DEFENDANTS FUNDAMENTALLY VIOLATE RULE 12(b)(6) STANDARDS

Before reaching the merits, this Court must address Defendants' systematic violation of basic motion to dismiss standards. Rather than accepting well-pleaded allegations as true and drawing reasonable inferences in Plaintiff's favor, Defendants dispute facts, demand documentary proof, and improperly transform this Rule 12(b)(6) motion into premature summary judgment.

### A.     Legal Standard Requires Accepting Allegations as True

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). A complaint survives dismissal if it contains "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.   Defendants' Systematic Factual Disputes Violate *Iqbal*

1. <u>**Authorization Dispute:**</u>
   - *Plaintiff alleges*: "Plaintiff was authorized by his nephew to access and use the truck if needed during his absence." **Compl. ¶ 14**.
   - *Defendants improperly argue*: Plaintiff "has not pled that he held any possessory interest in the truck through any applicable rental agreement." **Dkt. 13, p. 4**.

This argument demands documentary proof rather than accepting express allegations—a fundamental *Iqbal* violation.

2. <u>**Financial Interest Ignored:**</u>
   - *Plaintiff alleges*: "His nephew had rented a Penske truck (paid for by the Plaintiff)." **Compl. ¶ 14**.
   - *Defendants completely ignore* this financial ownership while arguing Plaintiff has "no possessory interest." **Dkt. 13, p. 4**.

3. <u>**Vehicle Status Disputed:**</u>
   - **Plaintiff alleges**: Nephew was temporarily "out of town" and Plaintiff was "staying at his nephew's apartment to watch his dog." **Compl. ¶ 14**.
   - **Defendants characterize**: Vehicle "apparently abandoned on a public roadway." **Dkt. 13, p. 5.**

### C.   These Violations Mandate Denial

Courts cannot grant Rule 12(b)(6) motions based on factual disputes or inferences drawn against plaintiffs. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Defendants' procedural violations alone require denial.

## III. PLAINTIFF HAS CLEARLY ESTABLISHED FOURTH AMENDMENT STANDING

Defendants' standing challenge fails under multiple independent theories, each sufficient under established precedent to confer constitutional protection.

## A. Supreme Court and Fifth Circuit Precedent Establishes Standing for Authorized Users

### 1. *Byrd v. United States* Transforms Rental Vehicle Analysis

The Supreme Court's decision in *Byrd v. United States* fundamentally changed Fourth Amendment analysis for rental vehicles, rejecting ownership as the sole test for standing. 584 U.S. 395, 398-98 (2018). The Court emphasized that authorized users can have reasonable expectations of privacy—in the Fourth Amendment context—even without formal ownership, explaining that "the mere fact that a driver in lawful possession or control of a rental car" even when "not listed on the rental agreement," still has a "reasonable expectation of privacy." *Id.* at 411.

### 2. Fifth Circuit Consistently Recognizes Authorized User Standing

The Fifth Circuit established in *United States v. Kye Soo Lee* that "where a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing" to make Fourth Amendment challenges. 898 F.2d 1034, 1038 (5th Cir. 1990). *See also United States v. Martinez*, 808 F.2d 1050, 1056 (5th Cir. 1987) (recognizing an individual's standing to bring a Fourth Amendment challenge when she testified that "she was using the car with [the owner's] permission").

### 3. Recent Application Confirms This Approach

The district court in *Degenhardt v. Bintliff* applied this precedent to find that vehicle borrowers have Fourth Amendment standing to challenge a vehicle seizure, reasoning that authorized users have "an expectation of possession for the purpose of transportation" and suffer constitutional injury. No. 2:23-CV-00239, 2024 WL 203249, 2024 U.S. Dist. LEXIS 10928, at *4-5 (S.D. Tex. Jan. 17, 2024). Significantly, the Fifth Circuit left this standing analysis undisturbed. *Degenhardt v. Bintliff*, 117 F.4th 747 (5th Cir. 2024).

## B. Plaintiff's Multiple Bases for Standing

### 1. Express Authorization Plus Financial Ownership

Unlike typical borrower cases, Plaintiff had both explicit authorization and complete financial ownership. Plaintiff "was authorized by his nephew to access and use the truck if needed during his absence." **Compl. ¶ 14**. Additionally, "his nephew had rented a Penske truck (paid for by the Plaintiff)." *Id*. This combination creates stronger Fourth Amendment interests than the "unauthorized" driver scenario in *Byrd* or typical family borrowing situations.

6

### 2. Municipal Ordinance Recognition of "Authorized Operators"

City of Euless Municipal Code § 90-94(c) explicitly protects "owner, authorized operator, or authorized agent" of vehicles subject to nonconsent tows. **Compl. ¶ 19**; Dkt. 1-1, A-013. This municipal recognition of authorized operator rights demonstrates societal acceptance of non-owner vehicle control relationships, supporting the reasonableness of Plaintiff's privacy expectations.

### 3. Scope of Authorization Encompasses Vehicle Protection

The nephew's authorization to Plaintiff to "access and use the truck if needed during his absence" (Compl. ¶ 14) necessarily includes authority to prevent unlawful seizure. Protecting the vehicle from wrongful towing clearly falls within the scope of authorized use during the owner's absence—indeed, failing to protect the vehicle from unlawful seizure would violate the authorization's purpose.

## C. Defendants' Contrary Authorities Are Distinguishable

### 1. *Riazco* Involved Unauthorized Use

Defendants' reliance on *United States v. Riazco*, 91 F.3d 752 (5th Cir. 1996), is misplaced because the individual in that case was not "given permission by the renter" to drive the vehicle. *Id.* at 754. Here, Plaintiff had explicit authorization (**Compl. ¶ 14**)—the exact distinction the Fifth Circuit drew in finding standing inappropriate in *Riazco*. *See* 91 F.3d at 754. (noting that Riazco admitted "he did not even have the renter's permission to drive it").

### 2. *Gaulden* Actually Supports Plaintiff

While Defendants cite *United States v. Gaulden*, 73 F.4th 390 (5th Cir. 2023), for narrow property requirements, *Gaulden* actually confirms that Fourth Amendment protection extends to those with "constitutionally protected property interest or a judicially conferred reasonable expectation of privacy." 73 F.4th at 392. Plaintiff's authorization and financial ownership create both elements.

## D. Constitutional Injury Is Clearly Established

"Impounding a vehicle qualifies as a seizure subject to a Fourth Amendment analysis." *Degenhardt*, 117 F.4th at 756. Moreover, Plaintiff suffered concrete constitutional injury including:

- Loss of authorized use of the vehicle for transportation
- Economic harm from wrongful towing and storage fees (**Compl. ¶ 45**)
- Practical burdens requiring alternative transportation arrangements (*id.*)

- Violation of rights under municipal ordinance (**Compl. ¶ 19**)

# IV.THE VEHICLE SEIZURE VIOLATED CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHTS

## A. Municipal Ordinance and State Law Created Clear Legal Framework

### 1.  Unambiguous Statutory Language

City of Euless Municipal Code § 90-94(c) provides that an "owner, authorized operator, or authorized agent" has an "absolute right to regain possession of the vehicle" if they arrive "before the vehicle is fully hooked up." **Compl. ¶ 19**; Dkt. 1-1, A-013. This language is unambiguous and creates clearly established rights.

The ordinance's protection extends specifically to "authorized operators"—precisely Plaintiff's relationship to the vehicle. **Compl. ¶ 14**. By including this language, the City recognized that vehicle control often involves persons other than formal owners, exactly the situation with rental vehicles where the renter authorizes others to use the vehicle.

### 2.  State Regulatory Confirmation

Texas Department of Licensing and Regulation guidance confirms this interpretation: "If you return to your car and it is being hooked-up to a tow truck but IT IS NOT FULLY hooked up and ready for towing, you can keep your car WITHOUT paying a CHARGE." **Compl. ¶ 18**. This official state interpretation carries the force of law and demonstrates that Plaintiff's understanding was correct.

### 3.  Defendants' Admission Establishes Legal Violation

Defendant Gibbons' statement—"He's right, I was not 100% connected to it" (**Compl. ¶ 23**; Dkt. 1-1, A-002, at 04:59)—conclusively establishes that Plaintiff correctly understood both the facts (incomplete hookup) and the law (absolute right to reclaim). Defendants cannot now argue they had lawful authority to complete a tow their own operator admitted was not properly initiated.

## B. Temporal Analysis: Constitutional Violation Preceded Any Justification

1. **<u>Phase 1: Valid Administrative Process</u>**
   - The vehicle was "red tagged" on September 16, 2024, with removal ordered by September 18, 2024. **Dkt. 1-1, A-006**.
   - Valid abandonment procedures were initiated on September 22, 2024. *Id*.

2. **Phase 2: Legal Intervention and Rights Assertion**
   - "Upon seeing that the tow truck had not yet hooked up the Penske truck, Plaintiff immediately ran to the truck and entered it." **Compl. ¶ 16**.
   - "At the time Plaintiff entered the vehicle, it was not yet hooked up to the tow truck." *Id.*
   - Municipal ordinance grants "absolute right" to authorized operators in this situation. **Compl. ¶ 19**.
   - "Defendant Gibbons even admitted to Officer Hamilton, as captured on his body camera footage: 'He's right, I was not 100% connected to it.'" **Compl. ¶ 23**.
   - "Despite this admission, Officer Hamilton agreed to let Gibbons complete the hook-up and tow Plaintiff's vehicle in violation of the law." **Compl. ¶ 24**.

3. **Phase 3: Constitutional Violation Crystallizes**
   - "Despite the vehicle not being fully hooked up, Gibbons, the tow truck operator, refused to release Plaintiff's vehicle unless he paid a $350.00 drop fee (despite not yet hooking up the vehicle)." **Compl. ¶ 20**.
   - Seizure continues without legal justification.
   - Original administrative purpose frustrated by refusing release to authorized person.

Under *Pennsylvania v. Mimms*, Fourth Amendment reasonableness "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." 434 U.S. 106, 109 (1977). Here, Plaintiff's clearly established municipal law rights—confirmed by defendants' own admission that "He's right, I was not 100% connected to it"—cannot be outweighed by generic community caretaking concerns that arose only after the constitutional violation occurred.

## C. Community Caretaking Exception Does Not Apply

### 1. *Degenhardt* Requires Actual Public Safety Justification

The Fifth Circuit held in *Degenhardt* that when officers "did not actually arrest the [plaintiffs], probable cause alone was not enough under the community caretaker exception." 117 F.4th at 756-57. The court emphasized that community caretaking must be "bas[ed] [on] something other than suspicion of evidence of criminal activity." *Id.*

Here, no immediate public safety concern justified refusing to release the vehicle to an authorized person who could immediately remove it from any traffic concerns. Honoring Plaintiff's municipal ordinance rights would have better served community caretaking goals than forcing a confrontation.

### 2. Promulgated Rights Override General Police Powers

Community caretaking authority cannot override specific rights created by municipal ordinance. The City of Euless deliberately created "absolute right" language to protect vehicle owners and operators in precisely this situation. **Compl. ¶ 19**; Dkt. 1-1, A-013. Under *Cleveland Bd. of Educ. v. Loudermill*, once the legislature creates a property interest, it "may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." 470 U.S. 532, 541 (1985). Here, defendants ignored both the specific legislative protection and their own admission that plaintiff was legally correct—exactly the type of arbitrary deprivation *Loudermill* prohibits."

### 3. Alternative Solutions Existed

Even assuming some community caretaking concern, alternatives existed that would have honored both public safety and statutory rights:

- Release vehicle to Plaintiff for immediate removal
- Temporary securing pending legal resolution
- Following municipal dispute resolution procedures
- Contacting the nephew for alternative arrangements

Administrative convenience cannot justify ignoring clear statutory rights when legal alternatives exist.

### D.        Post-Arrest Analysis Cannot Cure Prior Constitutional Violation

Defendants argue that Plaintiff's subsequent arrest justified completing the tow. This argument fails for multiple independent reasons:

**1.  Temporal Sequence Defeats the Argument**

As the Supreme Court recently emphasized in *Chiaverini*, constitutional violations cannot be cured by subsequent valid justifications. 602 U.S. 556, 563 (2024) ("[I]f an invalid charge  . . . causes a detention either to start or to continue, then the Fourth Amendment is violated" even when valid charges also exist). Here, defendants' constitutional violation—refusing to honor Plaintiff's "absolute right" under municipal ordinance despite their own admission that "He's right, I was not 100% connected to it"—occurred before any community caretaking justification arose. Under *Chiaverini*, this temporal sequence defeats defendants' post-hoc rationalization.

**2.  The Arrest Itself Lacked Probable Cause**

"On September 24, 2024, while Plaintiff was still in jail, Detective Norwood investigated the incident. Based on his review, he determined that Defendants lacked probable cause to charge him with Interference with Public Duties and dropped that charge**." Compl. ¶ 37**. An arrest lacking probable cause cannot justify continuing a seizure that was already constitutionally impermissible.

**3.  Municipal Law Rights Were Not Extinguished**

The ordinance creates absolute rights (**Compl. ¶ 19**) that do not disappear upon arrest, particularly when the arrest itself was constitutionally problematic. Municipal law provides no exception eliminating statutory rights upon arrest of the person asserting them.

**4.  Practical Alternatives Remained Available**

Even post-arrest, Defendants could have:

- Secured the vehicle temporarily pending legal resolution
- Released it to the nephew or one of his agents upon contact (nephew was "on the phone" during the incident, **Compl. ¶ 21**)
- Followed municipal procedures for disputed tows
- Documented the dispute for later legal resolution

No exigent circumstances required immediate completion of an admittedly improper tow.

## V. TOWING DEFENDANTS ACTED UNDER COLOR OF STATE LAW

Defendants B&B and Gibbons acted under color of state law through explicit statutory designation. Texas Occupations Code § 2308.255(e) makes tow truck operators conducting nonconsent tows "agents of the law enforcement agency." **Compl. ¶ 68**. When the legislature explicitly designates private parties as state agents, § 1983's color of law requirement is clearly satisfied. *West v. Atkins*, 487 U.S. 42, 49 (1988).

## VI. PLAINTIFF STATES VALID TEXAS STATE LAW CLAIMS

### A.     Texas Occupations Code § 2308.404 Creates Strict Liability

#### 1.   <u>Statutory Framework</u>

Section 2308.404 establishes private liability for towing companies violating Chapter 2308, creating strict liability without negligence requirements. **Compl. ¶ 92**. For intentional violations, the statute provides "$1,000 plus three times the amount of fees assessed." Tex. Occ. Code § 2308.404(c); **Compl. ¶ 95**.

#### 2.   <u>Multiple Statutory Violations</u>

*Towing with Occupant*: "Attempting to tow a vehicle with an occupant inside, which is prohibited." **Compl. ¶ 93(a)**.

*Failure to Release When Required*: "Failing to release the vehicle when Plaintiff arrived before the truck was fully hooked up, as specifically required by City of Euless Municipal Code § 90-94(c)." **Compl. ¶ 93(b).**

*Municipal Ordinance Violations*: "By violating Euless ordinance §90-94(c), Defendant also violated Texas Occupations Code Chapter 2308, specifically Sections 2308.208, which require compliance with applicable municipal ordinances." **Compl. ¶ 93(c)**.

*Demanding Unlawful Fees*: "Unlawfully towing the vehicle and refusing to release the vehicle to Plaintiff unless he paid at least $1,400.00, which was assessed in contradiction of state and local law." **Compl. ¶ 93(e)**.

### B.       Texas Theft Liability Act Claims

The Texas Theft Liability Act provides civil remedies for "unlawfully appropriating property with intent to deprive the owner of property." Tex. Civ. Prac. & Rem. Code § 134.002(2); **Compl. ¶ 98**.

***Unlawful Appropriation***: "Defendants Gibbons and B&B Wrecker unlawfully appropriated the Penske truck by towing it despite: (a) Plaintiff's presence in the vehicle; (b) Knowledge that Plaintiff was the authorized agent of the owner and was effectively the owner of the vehicle; (c) Defendant Gibbons' admission that the truck was not fully hooked up when Plaintiff entered it." **Compl. ¶ 99**.

***Intent to Deprive***: "By taking the vehicle under these circumstances, the Defendants intended to deprive the Plaintiff of the property, thereby satisfying the elements of theft under Texas law." **Compl. ¶ 100.**

***Damages***: "Under the TTLA, Plaintiff is entitled to actual damages, statutory damages of up to $1,000, and reasonable attorney's fees and costs." **Compl. ¶ 101**.

## VII. RESPONSE TO DEFENDANTS' SPECIFIC ARGUMENTS

### A.       Ordinance Interpretation: "Fully Hooked Up" Controls

Defendants argue Plaintiff's rights expired when the vehicle moved from the parking lot. This interpretation conflicts with the ordinance's plain language and structure.

#### 1. <u>Harmonious Reading Required</u>

Defendants fundamentally misread the municipal ordinance. City Code § 90-94(c) uses both location ("removal from property") and mechanical status ("fully hooked up") standards. **Dkt. 1-1**, A-013. Under standard statutory interpretation principles, these must be read together harmoniously. The "fully hooked up" language would be meaningless surplusage if any movement during towing eliminated all rights.

#### 2. <u>Legislative Purpose Analysis</u>

The ordinance's purpose is to protect vehicle owners from complete tows when they can resolve the situation. **Compl. ¶ 19**. This purpose would be frustrated if brief repositioning during hookup eliminated all rights. Defendants' interpretation would create illusory protection—tow operators could defeat owner rights simply by moving vehicles during the hookup process.

### 3. State Law Integration

The ordinance must be read consistently with TDLR guidance focusing on hookup completion, not precise vehicle location during the process. **Compl. ¶ 18**. Both sources emphasize the mechanical status of tow preparation, not geographical positioning.

## B.    "Abandonment" Theory Contradicts Well-Pleaded Facts

### 1. Legal Standard for Abandonment

Under Texas law, abandonment requires intent to relinquish ownership rights permanently. *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 73 (Tex. App.— Ft. Worth, 2005). Nonuse "is not sufficient to show abandonment." *Id*.

### 2. Factual Allegations Defeat Abandonment

- "His nephew was out of town for a few days" for legitimate business purposes. **Compl. ¶ 14**.

- "Plaintiff was authorized by his nephew to access and use the truck if needed during his absence." *Id*.

- The vehicle was properly parked near "the Euless Dog Park" where the nephew lived. **Compl. ¶ 15.**

- "Upon seeing that the tow truck had not yet hooked up the Penske truck, Plaintiff immediately ran to the truck and entered it." **Compl. ¶ 16.**

### 3. Red Tag Procedures vs. Abandonment Determination

Red tag procedures are administrative notifications, not determinations of abandonment. The ordinance's reclaim provisions (**Compl. ¶ 19**) would be meaningless if red tags automatically established abandonment.

## C.    State Actor Status Is Clearly Established

Defendants acknowledge they "have not addressed the 'state actors' element" due to "liberal pleading standards." **Dkt. 13, p. 3 n.2**. This concession, combined with the statutory designation in Texas Occupations Code § 2308.255(e) (Compl. ¶ 68), defeats their challenge to state actor status.

## VIII.ALTERNATIVE MOTION FOR LEAVE TO AMEND

Should this Court identify any pleading deficiencies—which should not occur given Defendants' procedural violations and the sufficiency of current allegations—Plaintiff respectfully moves for leave to amend pursuant to Rule 15(a)

## IX.SUPPLEMENTAL JURISDICTION IS APPROPRIATE

Federal courts should exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) because they:

- Arise from the same nucleus of operative facts as federal claims
- Present straightforward application of clearly established Texas statutes (Compl. ¶¶ 92-101)
- Benefit from unified resolution avoiding duplicative litigation
- Involve no novel or complex state law questions requiring abstention

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

## X.CONCLUSION: THE LAW WAS CLEAR, THE VIOLATION WAS ADMITTED, THE REMEDY IS ESTABLISHED

This motion ultimately fails because Defendants cannot escape the legal consequences of their own recorded admission. When Defendant Gibbons stated "He's right, I was not 100% connected to it" (**Compl. ¶ 23**; Dkt. 1-1, A-002, at 04:59), he acknowledged that Plaintiff had the absolute legal right to reclaim the vehicle under municipal ordinance and state regulatory guidance.

Everything that followed—the refusal to honor this clear right (**Compl. ¶ 20**), the demand for unauthorized payment (*id.*), the completion of an admittedly improper tow (**Compl. ¶ 24**)— violated clearly established constitutional and statutory protections designed to prevent exactly this type of wrongful conduct.

Defendants ask this Court to ignore this admission and dismiss Plaintiff's claims based on arguments that systematically violate Rule 12(b)(6) standards. They dispute well-pleaded allegations, draw adverse inferences against Plaintiff, and attempt to resolve factual disputes inappropriate for motion to dismiss resolution.

Under Supreme Court precedent in *Byrd* and Fifth Circuit authority in *Degenhardt*, their standing challenges fail. Under municipal ordinance (**Compl. ¶ 19**) and state regulatory interpretation (**Compl. ¶ 18**), their seizure was clearly unlawful. Under established § 1983 precedent and Texas consumer protection statutes (**Compl. ¶¶ 92-101**), their conduct created multiple viable causes of action.

The law was clear, Defendants' violation was admitted, and Plaintiff's right to seek redress is established. This motion should be denied, and this case should proceed to discovery where the full scope of Defendants' misconduct can be developed.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests that this Court deny Towing Defendants' Motion to Dismiss in its entirety, or in the alternative grant leave to amend, and award such other relief as the Court deems just and proper.

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Dr., Ste. 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765
**Lead Counsel for Plaintiff**

**-AND-**

**LAW OFFICES OF JASON SMITH**

**Jason C. Smith**
Texas State Bar No. 00784999
jasons@letsgotocourt.com
612 8th Ave.
Fort Worth, TX 76104
Telephone: (817) 334-0880
Facsimile: (817) 334-0898
**Local Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby affirm that on this July 28, 2025, that the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*
Brandon J. Grable