**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **E'Mann Comichi,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | **No. 4:25-cv-512** |
| | § | |
| **Officer Ingrid A. Pethel; Officer** | § | |
| **Brian S. Lord; Officer Wesley** | § | |
| **R. Hamilton; Detective William** | § | |
| **M. Norwood, B & B Wrecker** | § | |
| **Service, Inc.; and Bert Gibbons,** | § | |
| *Defendants.* | § | |

---

### BRIEF IN SUPPORT OF PLAINTIFF COMICHI'S RESPONSE TO EULESS DEFENDANTS' MOTION TO DISMISS

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff E'Mann Comichi, by and through undersigned counsel, respectfully submits this brief in support of his Response to the Euless Defendants' Motion to Dismiss and shows the Court as follows:

## Table of Contents

I.    INTRODUCTION .................................................................................. 4

II.   LEGAL STANDARD ............................................................................ 5

III.  OFFICER PETHEL'S INDIVIDUAL CONSTITUTIONAL VIOLATIONS ............. 5

    A.   False Arrest Based on Personal Knowledge of Detention Status ................................. 5

    B.   Pethel's Recorded Admissions Defeat any Alternative Probable Cause Theory ............. 6

        1. Detention Acknowledgment .................................................................. 6

        2. Explicit Arrest Basis ......................................................................... 6

    C.   Pethel's Knowledge of Protected Conduct Under Municipal Law ............................... 7

    D.   Pethel's Unlawful Searches Based on Individual Decisions ...................................... 8

    E.   Pethel's Individual Initiation of Malicious Prosecution ......................................... 9

IV.   OFFICERS LORD AND HAMILTON'S INDIVIDUAL CONSTITUTIONAL
VIOLATIONS ........................................................................................ 9

    A.   Lord's Active Participation in Constitutional Violations ......................................... 10

    B.   Hamilton's Individual Knowledge and Failure to Intervene ..................................... 10

    C.   Individual Contributions to Malicious Prosecution .............................................. 11

V.    DETECTIVE NORWOOD'S INDIVIDUAL CONSTITUTIONAL VIOLATIONS 11

    A.   Norwood's Personal Review and Selective Prosecution Decisions ............................. 12

    B.   Norwood's Individual Malice Through Selective Enforcement .................................. 12

VI.   DEFENDANTS CANNOT ESTABLISH PROBABLE CAUSE FOR ANY
CHARGES ............................................................................................ 13

    A.   No Probable Cause for Identification Charge ...................................................... 13

    B.   No Probable Cause for Interference Charge ....................................................... 13

       1.   Key Possession Is Irrelevant to Municipal Ordinance Rights ................................ 14

       2.   Ordinance Interpretation Defeats Defendants' Arguments .................................... 14

       3.   Plaintiff Was Not Interfering When Pethel Prevented His Departure ........................ 15

VII.  NO REASONABLE OFFICER COULD BELIEVE THIS CONDUCT WAS
LAWFUL .............................................................................................. 15

VIII. CONCLUSION .................................................................................. 16

# Table of Authorities

**Cases**

*Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009) ...........................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...............................................................5

*Bailey v. Iles*, 87 F.4th 275, 288 (5th Cir. 2023), ........................................................8

*Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016) ......................................5

*Chiaverini* ...............................................................................................................5, 7

*Chiaverini v. City of Napoleon* ......................................................................................4

*Chiaverini v. City of Napoleon*, 602 U.S. 556, 563 (2024), .............................................7

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ...........................................................13

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) .......................................................5

*Hill*, 482 U.S. at 461 ....................................................................................................9

*Malley v. Briggs*, 475 U.S. 335, 341 (1986). ..............................................................5, 7

*Malley v. Briggs.* ........................................................................................................16

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ............................................................5

*Reichle v. Howards*, 566 U.S. 658, 667-68 (2012) .........................................................12

*Terry v. Ohio*, 392 U.S. 1, 27 (1968) ............................................................................8

*Thompson v. Clark*, 596 U.S. 36, 49 (2022) ...............................................................9, 11

*Turner v. Driver* ............................................................................................4, 6, 9, 15

*Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017) .....................................................4

Under *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), ..............................................7

*United States v. Alvarez*, 40 F.4th 339, 345-46 (5th Cir. 2022) .......................................8

*United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987) .......................................9

Whitley v. Hanna ........................................................................................................11

*Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) ..................................................10

**Statutes**

602 U.S. at 563 ...........................................................................................................7

848 F.3d at 695 ...........................................................................................................6

Section 1983 ...............................................................................................................11

Texas Penal Code Section 38.02(a) ......................................................................6, 9, 12, 13

Texas Penal Code Section 38.15(a)(1) .......................................................................13, 15

**Municipal Ordinances**

Euless Municipal Code Section 90-94(c) .......................................................................7, 14

# I.INTRODUCTION

This case involves clear violations of established Fourth Amendment principles where individual officers violated Plaintiff's constitutional rights despite explicit legal protections under both Texas law and municipal ordinance. While Defendants raise various arguments about objective reasonableness and probable cause, these cannot overcome the fundamental problem: their own recorded admissions establish personal knowledge that their conduct violated clearly established law.

The undisputed facts, captured on the officers' own body cameras, demonstrate individual constitutional violations by each Defendant. Most damaging is Officer Pethel's explicit statement that she was arresting Plaintiff for identification refusal during an acknowledged detention—conduct that clearly violates *Turner v. Driver* and cannot be recharacterized under *Chiaverini v. City of Napoleon*. Officer Pethel arrested Plaintiff for refusing to identify during what she explicitly acknowledged was a detention, stating: "You're detained. I'm going to make it easy for you, either give me your name or you're going to be under arrest." **Dkt. 1-1, A-004, at 05:00**. Officers Lord and Hamilton witnessed these violations unfold over several minutes and failed to intervene despite clear opportunities to prevent them. Detective Norwood later reviewed the evidence, recognized one charge lacked probable cause, but continued prosecuting another charge that was equally baseless under established law.

Under Fifth Circuit precedent in *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017), no reasonable officer could believe that arresting someone for refusing identification during a detention complies with the Fourth Amendment. Each Defendant's individual conduct violated clearly established law that defeats qualified immunity.

## II.LEGAL STANDARD

The qualified immunity analysis involves two inquiries that this Court may address in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the Court must determine whether each Defendant violated a constitutional right. Second, the Court must assess whether the right was clearly established such that a reasonable officer in each Defendant's position would understand that their specific conduct violated that right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

Courts must analyze qualified immunity individually for each defendant rather than collectively. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016). In analyzing these questions, courts must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

This response demonstrates that: (1) each Euless Defendant individually violated Plaintiff's clearly established constitutional rights; (2) their recorded statements establish personal knowledge that defeats qualified immunity; (3) no probable cause existed for either charge under the specific legal framework governing this encounter; and (4) recent Supreme Court precedent in *Chiaverini* bars their temporal justification arguments.

## III.OFFICER PETHEL'S INDIVIDUAL CONSTITUTIONAL VIOLATIONS

### A.    False Arrest Based on Personal Knowledge of Detention Status

Officer Pethel individually violated Plaintiff's Fourth Amendment rights by arresting him solely for refusing to provide identification during what she explicitly acknowledged was an

investigative detention. Pethel's own recorded words establish her personal understanding of the legal situation: "**You're detained. I'm not going to make it super difficult for you, I'm making it very easy for you, either give me your name or else you're under arrest (Dkt. 1-1, A-004, at 5:07-5:13).** This statement proves Pethel personally knew she was conducting a detention, not an arrest, when she demanded identification.

Texas Penal Code Section 38.02(a) criminalizes failure to identify only when a person "intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information." Tex. Penal Code § 38.02(a). Pethel's own admission that she was "detaining" Plaintiff establishes her personal knowledge that the statutory predicate for demanding identification was absent.

The Fifth Circuit clearly held in *Turner v. Driver* that "police cannot arrest an individual solely for refusing to provide identification" during investigative detentions. 848 F.3d at 695. This precedent was established in 2017, providing Pethel with years of notice that her specific conduct violated clearly established law. No reasonable officer in Pethel's position could believe that explicitly acknowledging a detention while demanding identification, then arresting for refusal, complied with the Fourth Amendment.

### B.    Pethel's Recorded Admissions Defeat any Alternative Probable Cause Theory

Officer Pethel's own words, captured on body camera, destroy any *Devenpeck* alternative probable cause defense:

**1. Detention Acknowledgment:** "You're detained" **(Dkt. 1-1, A-004, at 5:05)**

**2. Explicit Arrest Basis:** "I'm not going to make it super difficult for you, I'm making it very easy for you, either give me your name or else you're under arrest". **(Dkt. 1-1, A-004, at 5:07-**

**5:13)** These recorded statements prove Officer Pethel personally understood she was conducting a detention when she demanded identification. Under *Chiaverini v. City of Napoleon*, 602 U.S. 556, 563 (2024), defendants cannot now claim the arrest was "really" for interference with public duties when Pethel explicitly told Plaintiff—and the body camera—exactly why she was arresting him.

The Supreme Court's decision in *Chiaverini* forecloses any attempt to justify Pethel's arrest through post-hoc theories about interference. When an officer explicitly states the basis for arrest—as Pethel did on camera—that basis must comply with the Fourth Amendment when made. 602 U.S. at 563. Alternative justifications cannot cure constitutional violations that were complete when they occurred. Here, Officer Pethel arrested Plaintiff for exercising his constitutional right to refuse identification during a detention. This violation was complete regardless of any arguable probable cause for other potential charges. Under *Malley v. Briggs*, 475 U.S. 335, 341 (1986), qualified immunity protects only officers whose conduct was objectively reasonable—not those who "knowingly violate the law" through conduct this obvious.

### C.    Pethel's Knowledge of Protected Conduct Under Municipal Law

Pethel's constitutional violation becomes more egregious considering her personal knowledge that Plaintiff's underlying conduct was explicitly protected by municipal law. City of Euless Municipal Code Section 90-94(c) grants "authorized operators" an "absolute right to regain possession of the vehicle" when they arrive "before the vehicle is fully hooked up." **Compl. ¶ 19; Dkt. 1-1, A-013**. The tow truck operator confirmed this legal framework directly to Pethel, stating on camera: "He's right, I was not 100% connected to it." **Dkt. 1-1, A-002, at 04:59**.

Despite this confirmation that Plaintiff was exercising clearly established legal rights, Pethel arrested him. Under *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), the First Amendment

protects "a significant amount of verbal criticism and challenge directed at police officers." Additionally, under *Bailey v. Iles*, 87 F.4th 275, 288 (5th Cir. 2023), protected conduct "cannot provide probable cause for an arrest" regardless of officer characterizations. Pethel's individual decision to arrest someone for exercising rights explicitly protected by municipal ordinance and confirmed as lawful by the tow operator violated clearly established constitutional principles.

### D.    Pethel's Unlawful Searches Based on Individual Decisions

Pethel individually conducted two separate unlawful searches. First, within minutes of arriving, she announced: "I'm going to pat you down for weapons. I'm not giving you an option." **Dkt. 1-1, A-004, at 01:24**. This search "included touching his genitals and going through his pockets." **Compl. ¶ 26**.

Under *Terry v. Ohio*, 392 U.S. 1, 27 (1968), Pethel could only conduct this search if she personally had reasonable suspicion that Comichi was armed and dangerous based on specific reasonable inferences rather than inchoate and unparticularized suspicion. *See also Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009) ("[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous."). The Fifth Circuit requires specific facts connecting the person to criminal activity beyond general suspicion or hunches. *United States v. Alvarez*, 40 F.4th 339, 345-46 (5th Cir. 2022).

Pethel possessed no such facts. She knew Plaintiff "called the police himself," posed no apparent threat, and was asserting rights explicitly protected by municipal ordinance. **Compl. ¶ 50**. Her individual decision to conduct an invasive search without reasonable suspicion violated clearly established Fourth Amendment principles that any reasonable officer would have known. Defendants try to characterize Plaintiff as "extremely agitated and acting verbally erratic," but this subjective characterization from a newly-trained officer cannot overcome objective legal

standards—namely that Plaintiff has a constitutional right to verbally criticize police conduct. *Hill*, 482 U.S. at 461.

Second, Pethel's search incident to arrest was unlawful because it flowed from her constitutionally impermissible arrest. Under *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987), searches incident to unlawful arrests violate the Fourth Amendment. Since Pethel's arrest for identification refusal during a detention was unconstitutional under *Turner v. Driver* her subsequent search violated clearly established law.

### E.    Pethel's Individual Initiation of Malicious Prosecution

Pethel individually initiated both prosecutions against Plaintiff through her arrest decisions and charge recommendations. Her arrest for failure to identify was based on conduct she personally knew was not criminal under Texas Penal Code Section 38.02(a)

. Her interference charge was based on conduct she personally witnessed the tow operator confirm was legally protected under municipal ordinance.

Pethel's individual malice is established through her recorded statements demonstrating personal knowledge that her conduct was unlawful. She explicitly acknowledged conducting a "detention" while demanding identification required only after "lawful arrest." She heard the tow operator confirm Plaintiff's legal right to reclaim the vehicle. Despite this personal knowledge, she arrested Plaintiff and recommended charges she knew lacked probable cause. *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

## IV. OFFICERS LORD AND HAMILTON'S INDIVIDUAL CONSTITUTIONAL VIOLATIONS

### A.    Lord's Active Participation in Constitutional Violations

Officer Lord did not merely witness constitutional violations—he actively participated in facilitating them. When Pethel conducted her unlawful search and arrest, Lord "volunteered to hold Plaintiff's phones." **Compl. ¶ 64**. Lord also "participated in and supported the wrongful arrest and charges by signing off on one of the charge citations together with Pethel." **Compl. ¶ 77(b)**.

Lord's individual liability stems from his personal participation in constitutional violations he personally knew were unlawful. The body camera evidence shows Lord was present throughout the encounter, personally witnessed Pethel's explicit statement that she was "detaining" Plaintiff, and heard the tow operator confirm Plaintiff's legal rights. Despite this personal knowledge, Lord actively facilitated the unlawful arrest by volunteering to hold evidence and co-signing criminal charges.

Under *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), Lord had a duty to intervene when he personally "knows that a fellow officer is violating an individual's constitutional rights" and has "a reasonable opportunity to prevent the harm." Lord's active participation rather than intervention, combined with his personal knowledge of the legal violations, establishes his individual constitutional violation.

### B.    Hamilton's Individual Knowledge and Failure to Intervene

Officer Hamilton possessed individual knowledge that made his failure to intervene particularly egregious. Hamilton was the first officer on scene and personally interacted with both Plaintiff and the tow operator before Pethel arrived. Hamilton personally heard the tow operator admit: "He's right, I was not 100% connected to it." **Dkt. 1-1, A-002, at 04:59**. Hamilton also personally observed Plaintiff exercising rights protected by municipal ordinance.

Despite this individual knowledge of the legal framework protecting Plaintiff's conduct, Hamilton failed to intervene when Pethel violated clearly established law. Hamilton personally

Page 10 of 18

witnessed Pethel demand identification during an acknowledged detention and arrest Plaintiff for refusal. Under Whitley v. Hanna, Hamilton's individual failure to prevent constitutional violations he personally knew were occurring establishes his liability under Section 1983.

Hamilton's individual qualified immunity fails because any reasonable officer in his position, with his personal knowledge of the municipal ordinance protections and the tow operator's admissions, would have known that arresting Plaintiff violated clearly established law.

### C.    Individual Contributions to Malicious Prosecution

Both Lord and Hamilton individually contributed to the malicious prosecution through their personal participation in constitutional violations. Under *Thompson v. Clark*, 596 U.S. 36, 49 (2022), malicious prosecution requires favorable termination[1] and lack of probable cause—elements both officers knew were absent. Lord's co-signing of criminal charges despite personal knowledge that Plaintiff was exercising protected rights, and Hamilton's failure to correct obvious legal errors despite his personal knowledge of the legal framework, directly contributed to the baseless prosecution proceeding.

Their individual malice is established through their personal knowledge that the charges lacked probable cause combined with their affirmative actions to facilitate prosecution. Both officers personally witnessed the tow operator confirm Plaintiff's legal position and personally heard Pethel acknowledge she was conducting a detention rather than an arrest when demanding identification.

## V. DETECTIVE NORWOOD'S INDIVIDUAL CONSTITUTIONAL VIOLATIONS

---

[1] As alleged, "the charges were without probable cause and terminated in Plaintiff's favor." **Compl. ¶ 40**. The charges against Plaintiff were ultimately dismissed, clearly establishing favorable termination.

Under *Reichle v. Howards*, 566 U.S. 658, 667-68 (2012), Detective Norwood is the proper defendant because he "prompted the prosecutor's decision" through his investigation and charging recommendations, while prosecutors enjoy absolute immunity. Norwood's selective enforcement decisions—dropping one baseless charge while continuing another equally baseless charge based on the same evidence—establishes his individual causation of the malicious prosecution.

### A.    Norwood's Personal Review and Selective Prosecution Decisions

Detective Norwood individually violated Plaintiff's constitutional rights through his selective prosecution decisions based on his personal review of the evidence. Norwood "investigated the incident" and "determined that Defendants lacked probable cause to charge him with Interference with Public Duties and dropped that charge." **Compl. ¶ 37**. However, Norwood "allowed the charge of Failure to Identify to proceed" despite having "access to body camera footage showing the entire encounter." **Compl. ¶ 86**.

Norwood's individual review of the body camera evidence provided him personal knowledge of the legal impossibility of the identification charge. The footage showed Pethel explicitly stating "You're detained" before demanding identification. Norwood's training and experience would have informed him that Texas Penal Code Section 38.02(a) requires a "lawful arrest" as predicate to identification duties.

### B.    Norwood's Individual Malice Through Selective Enforcement

Norwood's individual malice is established through his contradictory decisions based on the same evidence. His determination that the interference charge lacked probable cause demonstrates his personal understanding that Plaintiff's conduct was legally protected. Yet he continued prosecuting the identification charge despite having access to the same body camera evidence showing that charge was equally baseless under *Turner v. Driver* and Texas law.

Page 12 of 18

A reasonable detective in Norwood's position, with his personal access to the complete evidence and his demonstrated ability to recognize lack of probable cause, would have known that continuing prosecution on the identification charge violated clearly established law. His selective dismissal of one baseless charge while continuing another equally baseless charge establishes his individual malicious prosecution.

## VI. DEFENDANTS CANNOT ESTABLISH PROBABLE CAUSE FOR ANY CHARGES

### A.    No Probable Cause for Identification Charge

The identification charge was legally impossible under Texas Penal Code Section 38.02(a), which requires a "lawful arrest" before any identification duty arises. Pethel's recorded statement—"You're detained"—establishes that no arrest occurred when she demanded identification. Her subsequent arrest for identification refusal was the constitutional violation, not a predicate that could retroactively validate the identification requirement.

Defendants' reliance on *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), fails because *Devenpeck* permits alternative probable cause justifications only when probable cause actually exists for some offense. Here, no probable cause existed for either the identification charge (legally impossible under Texas law when Pethel acknowledged conducting a detention) or the interference charge (conduct explicitly protected by municipal ordinance). Protected conduct cannot become criminal through officer mischaracterization.

### B.    No Probable Cause for Interference Charge

The interference charge was legally impossible because Plaintiff's conduct was explicitly protected by municipal ordinance. Texas Penal Code Section 38.15(a)(1) requires interference with officers "performing a duty or exercising authority imposed or granted by law." City of Euless

Municipal Code Section 90-94(c) granted Plaintiff an "absolute right to regain possession of the vehicle" when he arrived "before the vehicle is fully hooked up." **Dkt. 1-1, A-013**.

### 1.      Key Possession Is Irrelevant to Municipal Ordinance Rights

Defendants repeatedly suggest that Plaintiff lacked keys to the vehicle, apparently believing this undermines his right to enter the truck and therefore establishes probable cause for interference. This argument fails for multiple reasons. First, the interference charge requires proof that Plaintiff unlawfully interfered with police duties. Here, Plaintiff was exercising rights explicitly protected by municipal ordinance, making interference legally impossible regardless of key possession. Municipal ordinance rights under City Code § 90-94(c) depend on "authorized operator" status, not possession of entry tools.

Second, entering a vehicle without keys does not establish criminal intent when the person has explicit authorization from the renter. Plaintiff alleges he "was authorized by his nephew to access and use the truck if needed during his absence." **Compl. ¶ 14**. Authorization to use necessarily includes authority to enter and protect the vehicle from unlawful seizure, regardless of the specific mechanisms provided. Third, the tow operator's own admission—"He's right, I was not 100% connected to it"—confirms that Plaintiff's conduct was legally protected under the ordinance, regardless of how he gained entry to exercise those rights.

### 2.      Ordinance Interpretation Defeats Defendants' Arguments

Defendants' argument that repositioning the vehicle eliminated Plaintiff's rights misinterprets the ordinance. The ordinance uses both location ("before its removal from the property") and mechanical status ("before the vehicle is fully hooked up") requirements. Under standard interpretation principles, these must be read harmoniously. The "fully hooked up" language would be meaningless if any movement during towing eliminated all rights. The tow

operator's admission—"He's right, I was not 100% connected to it"—confirms Plaintiff exercised his absolute legal right.

### 3.   <u>Plaintiff Was Not Interfering When Pethel Prevented His Departure</u>

The fatal flaw in Defendants' motion is their failure to address the controlling temporal sequence. When Officer Pethel arrived, any perceived "interference" had ended—Plaintiff had exited the vehicle and "began to walk away." **Compl. ¶ 28**. The reasonable police response would have been to allow this voluntary departure, ending the encounter without constitutional violation.

Instead, Pethel detained Plaintiff for identification purposes unrelated to the towing process. Her statement—"Since I spoke with you, I need to have your name"—reveals that her motivation was investigative detention, not protection of ongoing police duties. This decision transformed a resolved situation into an unlawful seizure that violated clearly established Fourth Amendment principles.

Texas Penal Code § 38.15(a)(1) requires active interference with police duties. Walking away from a tow cannot constitute interference. No reasonable officer could believe that detaining someone who is voluntarily leaving complies with constitutional requirements, particularly when the detention's purpose is identification rather than enforcement of any specific criminal law.

## VII. NO REASONABLE OFFICER COULD BELIEVE THIS CONDUCT WAS LAWFUL

Each Defendant's individual conduct was objectively unreasonable under clearly established law:

Officer Pethel could not reasonably believe that explicitly acknowledging a detention while demanding identification, then arresting for refusal, complied with *Turner v. Driver* and Texas

Penal Code Section 38.02(a). Her recorded statements establish her personal knowledge that her conduct was unlawful.

Officers Lord and Hamilton could not reasonably believe that facilitating arrest of someone exercising rights explicitly protected by municipal ordinance and confirmed by the tow operator complied with clearly established law. Their personal knowledge of the legal framework made their failure to intervene objectively unreasonable.

Detective Norwood could not reasonably believe that continuing prosecution on a charge requiring a "lawful arrest" when the evidence showed only a detention complied with established law. His demonstrated ability to recognize lack of probable cause on the related charge makes his selective prosecution objectively unreasonable.

## VIII. CONCLUSION

Each Euless Defendant individually violated Plaintiff's clearly established constitutional rights through personal conduct that no reasonable officer could believe was lawful. Their own recorded admissions—Officer Pethel's acknowledgment of detention status and all officers' awareness of the municipal law framework—establish the personal knowledge that defeats qualified immunity under *Malley v. Briggs*. This is not a case of split-second decisions under uncertain law, but rather extended deliberate conduct despite clear knowledge of legal violations. The motion should be denied.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that this Court deny the Euless Defendants' Motion to Dismiss in its entirety and award such other relief as the Court deems just and proper.

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Dr., Ste. 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765
**Lead Counsel for Plaintiff**


**-AND-**

**LAW OFFICES OF JASON SMITH**

**Jason C. Smith**
Texas State Bar No. 00784999
jasons@letsgotocourt.com
612 8th Ave.
Fort Worth, TX 76104
Telephone: (817) 334-0880
Facsimile: (817) 334-0898
**Local Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby affirm that on this August 1, 2025, that the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.


*/s/ Brandon J. Grable*
Brandon J. Grable