UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

E'MANN COMICHI,

   Plaintiff,

v.   No. 4:25-cv-00512-P

INGRID A PETHEL, ET AL.,

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants B & B Wrecker Service, Inc.'s and Bert Gibbons's (collectively, the "Towing Defendants") Motion to Dismiss (ECF No. 13) and Defendants Wesley Hamilton's, Brian Lord's, William Norwood's, Ingrid Pethel's (collectively, the "State Defendants") Motion to Dismiss (ECF No. 14). For the reasons set out below, the Motions will be **GRANTED**.

## BACKGROUND[1]

Plaintiff E'Mann Comichi filed this lawsuit on May 15, 2025, alleging six claims under 42 U.S.C § 1983 against the State Defendants and two claims against the Towing Defendants. Specifically, Plaintiff brings claims against the State Defendants for: (1) false arrest; (2) unlawful search; (3) unlawful search and seizure incident to unlawful arrest; (4) failure to intervene; (5) unlawful seizure; and (6) malicious prosecution.

---

[1]The following factual background is derived from Plaintiff's Complaint and the bodycam footage attached therein. *Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-CV-0432-D, 2021 WL 9893514, at *14 (N.D. Tex. Sept. 17, 2021) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)) ("The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.") (cleaned up).

Additionally, Plaintiff brings claims against the Towing Defendants for: (1) theft and (2) violating Texas Occupation Code Section 2308.404.

Plaintiff's claims arise out of a September 2024 incident involving the towing of a large Penske truck rented by his nephew. Plaintiff's nephew illegally parked the Penske truck in the parking lot of the Euless Dog Park before leaving town for vacation. After the Penske truck had been illegally parked for a period of time, the Penske truck was red tagged by the Euless Police Department on September 16, 2024. That red tag was placed on the driver side window, and it stated that the Penske truck was illegally parked and needed to be moved by September 18, 2024. Six days later, on September 22, 2024, noticing that the vehicle had not been moved as ordered, Officer Pethel contacted B&B Wrecker and asked that the vehicle be towed due to it being considered abandoned under the city ordinance.

B&B Wrecker promptly sent Gibbons to remove the large Penske truck per Officer Pethel's request. Gibbons, upon arriving at the dog park, realized he needed to move the Penske truck to get a completely secure hookup due to the manner in which the large truck was parked. Gibbons then partially hooked the Penske truck up and moved it from the dog park's parking lot to a nearby street. After successfully moving the Penske truck out of the parking lot and into the street, Gibbons began the process of re-hooking up to the Penske truck.

Plaintiff, who was in town watching his nephew's dog, noticed Gibbons re-hooking up to the Penske truck while walking his nephew's dog. Acting quickly, Plaintiff left the dog in the park and ran over to the Penske truck where he jumped into the driver's seat. After Plaintiff refused to exit the vehicle or pay a drop-down fee at Gibbons's request, both Gibbons and Plaintiff called the police. Officer Hamilton arrived on the scene shortly thereafter. When Officer Hamilton arrived, Plaintiff was seated in the driver's seat and the tow truck was completely hooked up to the Penske truck. Plaintiff was on the phone with his nephew[2] and was holding two other phones. Plaintiff informed Officer Hamilton that

---

[2]Plaintiff's nephew remained on the phone for the entirety of the incident and periodically would speak to Plaintiff or the officers.

2

he had gotten into the Penske truck before Gibbons had completed the hook up, and Gibbons stated that "I was not 100% connected to it" when Plaintiff entered the vehicle. After Plaintiff continued to insist the Penske truck was not illegally parked, Gibbons used a tool to jump start the vehicle and roll the driver side window back up (because he had previously rolled it down) so Plaintiff could see the red tag. After Officer Hamilton made multiple requests for Plaintiff to exit the vehicle and look at the red tag, Plaintiff exited the vehicle.

After exiting the vehicle and reading the red tag, Plaintiff began to again assert his position that even though Gibbons had already moved the Penske truck, they had to release the truck to him because he had gotten in the vehicle before it was 100% re-connected. During this exchange Plaintiff became increasingly agitated and hostile towards Gibbons and Officer Hamilton. Due to Plaintiff's increasing hostility, Officer Hamilton called for backup. Shortly thereafter, Officers Pethel and Lord arrived on the scene and asked Plaintiff to move out of the road for everyone's safety.

After moving to the other side of the Penske truck, Plaintiff began arguing with the officers regarding whether he needed to move to the sidewalk as he insisted they were safe despite still being in the road. Officer Pethel then informed Plaintiff she needed to pat him down for everyone's safety to ensure that he did not have any weapons. After initially resisting, and calling for Officer Hamilton, Plaintiff placed his three phones on the ground and allowed Officer Pethel to pat him down. As Officer Pethel was finishing her brief pat down, Plaintiff informed her that he was offended she patted him down because she is female.

After retrieving his phones from the ground, Plaintiff ignored Officer Pethel's request for Plaintiff to identify himself and began speaking to Officer Hamilton. After being told that Officer Pethel was the officer in charge, Plaintiff began relaying his story to Officer Pethel. Plaintiff re-urged his argument that the Penske truck had not been illegally parked. After again explaining the city ordinance and the red tag to Plaintiff, Officer Pethel told Plaintiff that she would ask Gibbons about letting the truck down for a drop fee. Plaintiff responded that he would not pay a drop fee, began speaking with his nephew on the phone, and

3

started walking away from the officers. Officer Pethel, for the third time, asked Plaintiff for his name. When Plaintiff refused, Officer Pethel stated "I spoke with you, and you were detained so you need to give me your name." Plaintiff continued to speak over Officer Pethel and refused to give his name. In response, Officer Pethel stated "I am going to make it easy for you, either give me your name of you are under arrest." Plaintiff, speaking to his nephew and ignoring Officer Pethel, stated that he was going to let them arrest him and asked his nephew to come to the station. Plaintiff then asked one of the officers to hold his phones and placed his hands behind his back.

Officer Pethel placed Plaintiff under arrest and asked multiple times for Plaintiff's name. Plaintiff continued to refuse to identify himself and told the officers to walk him to their car. Officer Pethel then walked Plaintiff to her police vehicle and began to search Plaintiff incident to the arrest. During the search of his person, Plaintiff asked Officer Pethel what crime he had been arrested for, and she answered, "interference with public duties." After Plaintiff continued to refuse to identify himself Officers Hamilton and Pethel discussed "adding fail to ID" to the charges.

After Plaintiff was placed in the back of the police vehicle, Officer Hamilton went to speak with Gibbons who informed Officer Hamilton that he had already had possession of the vehicle for twenty minutes and had moved the vehicle before Plaintiff arrived. Officer Hamilton then instructed Gibbons to finish towing the vehicle. After locating the nephew's dog, the officers left the scene and took Plaintiff to Hurst Jail, where Plaintiff continued to refuse to identify himself. Plaintiff was charged with Interference with Public Duties and Failure to Identify. Subsequently, the charges were dropped, and Plaintiff was not prosecuted under either charge.

## LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not

4

require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### B. Qualified Immunity

The doctrine of qualified immunity "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016) (citation omitted). "This immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)). "Accordingly, we

do not deny immunity unless 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Id.* at 599–600 (citation omitted). To defeat qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 600 (citation omitted).

"If the defendant's actions violated a clearly established constitutional right" courts examine "whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). Courts must focus on the state of the law at the time of the incident and whether it provided fair warning to the defendant that his conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The caselaw must establish beyond debate that the officer's conduct violated then-clearly established law. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). Plaintiffs must "identify a case in which an officer acting under similar circumstances was held to [have committed a constitutional violation] and explain why the case clearly proscribed the conduct of the officer." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (citation modified). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotations and citation omitted).

## ANALYSIS

The State Defendants assert they are entitled to qualified immunity on all of Plaintiff's claims against them. *See generally* ECF No. 15. The Towing Defendants argue Plaintiff's claims against them should be dismissed because Plaintiff lacks Fourth Amendment standing and because Plaintiff failed to state a claim upon relief can be granted. ECF No. 13. Plaintiff insists both Motions should be denied. ECF Nos. 17, 19. The Court will address each Motion in turn.

### A. The State Defendants

As discussed above, Plaintiff has brought claims against the State Defendants for: (1) false arrest; (2) unlawful search; (3) unlawful search and seizure incident to unlawful arrest; (4) failure to intervene; (5) unlawful seizure; and (6) malicious prosecution. Defendants assert they are entitled to qualified immunity because there was no constitutional violation and even if there was no reasonable officer in Defendants' position would have concluded they violated Plaintiff's constitutional rights. ECF No. 15. Plaintiff's opposition to the granting of qualified immunity can be summarized by four arguments: (1) it was improper to arrest him only for failing to identify himself; (2) there was no probable cause to arrest him for failing to identify himself; (3) his conduct was protected by a municipal law; and (4) Officer Pethel's searches were improper. *See generally* ECF No. 19. For the reasons set out below, the Court holds that the State Defendants are entitled to qualified immunity.

#### 1. Whether Plaintiff's actions were protected

Plaintiff contends he did not commit the offense of interference with a public duty because his actions were protected by municipal law. A person commits the offense of Interference with Public Duties "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). Plaintiff, as he did at the scene, contends that he did not interfere with public duties because his actions were protected by municipal law. ECF No. 19 at 7–8, 9, 10–11, 13–16. Specifically, Plaintiff cites to Euless Municipal Code Section 90–94(c). *Id.* at 7. Section 90–94(c) states in its entirety:

> If the owner, authorized operator, or authorized agent of the owner of a motor vehicle that is subject to a nonconsent tow attempts to retrieve the motor vehicle before its removal from the property or parked location, the maximum amount that may be charged for a drop fee (if the motor vehicle is hooked up) is the maximum fee permitted by state regulation. Before its removal from the property the vehicle owner or operator has an absolute

7

> right to regain possession of the vehicle by payment of the drop fee. In the event the owner or operator arrives to move the vehicle before the vehicle is fully hooked up, no drop fee may be charged.

*See* ECF No. 1-1, Ex. 5 at 3.

Plaintiff's argument fails for two reasons. *First*, he was not "the owner, authorized operator, or authorized agent of the owner." Here it is undisputed that Penske owns the truck. Further, Plaintiff was not an authorized operator or authorized agent of the owner because Penske's rental agreement was with Plaintiff's nephew—not him. *See United States v. Riazco*, 91 F.3d 752, 754–55 (5th Cir. 1996) (collecting cases) (holding that a defendant had no expectation of privacy and no possessory interest in a vehicle because he was not a party to the vehicle's rental agreement). The Riazco court's finding that there was no possessory interest or expectation of privacy was based on the fact that the defendant was not the owner nor authorized user because his name was not on the rental agreement. *Id.* That same logic applies here. Thus, because Plaintiff was not on the lease agreement he was not "the owner, authorized operator, or authorized agent of the owner" of the Penske truck, and his actions were not protected nor proper under Section 90–94(c).

*Second*, Plaintiff's argument fails because the Penske truck had already been moved from the "property or parked location," and Gibbons had custody of the vehicle on behalf of the police department for more than twenty minutes before Plaintiff arrived. In the initial exchange with Officer Hamilton, Plaintiff stated that he saw Gibbons move the Penske truck and that he jumped into the vehicle when he disconnected to get a better connection before towing the Penske truck to impound. ECF No. 1, Ex. 1 at 5:15-5:38. Thus, even if Plaintiff was one of the persons authorized to stop the tow under the statute, the Penske truck had already been removed from its illegal parking spot in the dog park's parking lot. Therefore, it was too late for Plaintiff to exercise the "absolute right to regain possession" as the Penske truck had already

8

been moved from "the property or parked location."³ *See* Euless Municipal Code Section 90–94(c). Consequently, because Plaintiff had no legal right to stop the tow under the statute, the officers had probable cause at the time of arrest to find Plaintiff had "interrupted, disrupted, impeded, or otherwise interfered with" the Towing Defendants' exercise of authority "imposed or granted by law" due to his entering of the vehicle and subsequent actions.

Plaintiff attempts to save his claim that there was no probable cause for his arrest for interfering with public duties with three arguments. Plaintiff first points to the fact that he was not prosecuted for that charge as it was voluntarily dropped. ECF No. 19 at 12–13. But it is well established that "the fact that the criminal charges were subsequently dismissed does not negate the existence of probable cause at the time of the arrest and preferring of charges." *Johnson v. Town of Prosper, Texas*, No. 4:23-CV-650, 2025 WL 1811510, at *14 (E.D. Tex. July 1, 2025) (internal citations omitted). Plaintiff next alleges that he was an authorized user because he loaned his nephew money for the rental and had authorization from his nephew to move the truck. But just as before, courts have found that a person who is not subject to the rental agreement has no possessory interest or expectation of privacy even though they were driving a vehicle with the permission of the passenger, who rented the vehicle. *Riazco,* 91 F.3d at 754–55. And Plaintiff supplies no case law, and the Court cannot find any, that supports his assertion of a possessory interest based on his loaning his nephew money to rent the Penske truck.

Finally, Plaintiff points to his attempt to walk away from the scene and argues that "[t]he reasonable police response would have been to allow this voluntary departure, ending the encounter without constitutional violation." ECF No. 19 at 15. But that argument ignores that fact that he had been detained for questioning and was not free to leave. In fact, in quoting Officer Pethel, Plaintiff selectively omits this

---

³The Court notes Gibbons later discovered and informed Officer Hamilton that the drop fee was not an option as it could only be offered to Penske (as the owner) or the nephew (as the authorized operator). *See* ECF No. 1-1, Ex. 1 at 14:14–14:30.

from the quote. *Compare* ECF No. 19 (Pl.'s Brief in Opp'n to Defs.' Mot. To Dismiss) at 15 ("Since I spoke with you, I need to have your name") *with* ECF No. 1-1, Ex. 1 (footage from officer's body-worn camera) at 10:00–10:20 ("I spoke with you, and you were detained, so you need to give me your name"). Consequently, Plaintiff has failed to allege a constitutional violation as a result of the arrest and charging of Plaintiff for interference with public duties. Therefore, the State Defendants are entitled to qualified immunity on these claims.

2. Failure to Identify Arguments

Plaintiff's first, third, fourth, and sixth claims are all predicated on his assertions that he was arrested solely for failing to identify himself and that the arrest was without probable cause. ECF Nos. 1; 19 at 5–7, 8–13, 15–16. Plaintiff bases these arguments on case law stating that someone cannot be arrested solely for refusing to identify themselves and on Texas Penal Code Section 38.02(a), which provides that someone must be under a lawful arrest before having a duty to identify themselves.

Plaintiff first asserts that under *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017), the officers could not arrest him solely for refusing to identify himself. ECF No. 19 at 4. While that is a correct statement of the law, it is irrelevant here as it completely ignores the fact that when Plaintiff asked the officers what he was under arrest for they informed him that he was under arrest for interference with public duties.[4] ECF No. 1-1, Ex. 2 at 6:55-7:05. And it was only after he refused to identify himself after being arrested that the officers decided to add failure to identify. ECF No. 1-1, Ex. 1 at 13:22-13:33 (The following exchange occurred after Plaintiff was informed that he was under arrest for interference with public duties and Plaintiff refused to identify himself while sitting in the back of the police vehicle. Officer Hamilton: "I would just add fail to ID." Officer Pethel: "That is exactly what I am doing."). Consequently, Plaintiff was not arrested solely for failure to identify himself and there was therefore no Fourth Amendment violation under *Turner*.

---

[4] An arrest for which, as discussed above, there was probable cause.

Next, Plaintiff claims that he had no duty to identify himself, and thus there was no probable cause for the arrest, because he was only detained when Officer Pethel asked him to identify himself. While Officer Pethel asked Plaintiff to identify himself numerous times before Plaintiff was arrested, as discussed above, Plaintiff was given multiple opportunities to identify himself after being arrested for interference and refused to do so. In fact, Plaintiff continued to refuse to identify himself at the Hurst Jail. Thus, Plaintiff's argument that he had no duty to identify himself because he was only detained when he refused to identify himself plainly fails. Therefore, the State Defendants are entitled to qualified immunity on these claims.

### 3. The Searches

Finally, Plaintiff raises two unlawful search claims. One is based on Officer Pethel's original weapons pat down, and the other is based on the search post arrest. ECF No. 1 at 13–16. Because, as discussed above, the arrest was proper, Plaintiff's post-arrest search claim fails. Thus, the Court will focus its analysis on Officer Pethel's weapons pat down. Plaintiff asserts that Officer Pethel's weapons pat down was unconstitutional because she had no reasonable suspicion to suspect that he was armed and dangerous. ECF No. 19 at 8–9. "'[O]fficers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot.'" *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (*en banc*) (discussing *Terry v. Ohio,* 392 U.S. 1 (1968))). And reasonable suspicion allows for a protective search where "the officer may conduct a pat down search 'to determine whether the person is . . . carrying a weapon.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 24).

Here, as discussed above, when Officer Pethel arrived Plaintiff was standing in the middle of the street, had halted the Towing Defendants' ability to lawfully tow the Penske truck, and was clearly agitated and acting in a hostile manner. Thus, there was reasonable suspicion that criminal activity was occurring. Accordingly, the Court finds that at a minimum Officer Pethel's very brief pat down was objectively

11

reasonable and, thus, the State Defendants are entitled to qualified immunity on these claims.

## B. The Towing Defendants

Plaintiff raises two claims against the Towing Defendants. ECF No. 1 at 24–28. Both claims are based on Plaintiff's assertion that his actions were proper under the municipal code. *Id.* As discussed above, Plaintiff's actions were not proper or protected. Therefore, the claims against the Towing Defendants are without merit and their Motion to Dismiss is hereby **GRANTED with prejudice**.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Towing Defendants' Motion to Dismiss (ECF No. 13) and the State Defendants' Motion to Dismiss (ECF No. 14). Therefore, Plaintiff's claims are hereby **DISMISSED**.

**SO ORDERED** on this **15th day of August 2025.**

_[signature: Mark T. Pittman]_

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE